**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 7 2021

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

**(NORTHERN DIVISION)**

TERESA WILSON, RYAN SANDERS,
SUSAN CANADA, TABATHA SIDI, JOLINA
MANLEY, HEATHER LOWREY,
CASSANDRA MARTELL, ASHLEY POPA,
JESSICA DAVID, and LESLIE AINSWORTH,
individually, and on behalf of all others
similarly situated,

        Plaintiffs,

        v.

WALMART, INC.; and DOES 1 through 10,
inclusive,

        Defendants.

Case No.: 3:21CV82-DPM

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

This case assigned to District Judge Marshall
and to Magistrate Judge Kay

        Plaintiffs Teresa Wilson, Ryan Sanders, Susan Canada, Tabatha Sidi, Jolina Manley, Heather Lowrey, Cassandra Martell, Ashley Popa, and Jessica David ("Plaintiffs"), on behalf of themselves and the Class and Subclasses of all others similarly situated, bring this class action against Defendant Walmart, Inc. ("Walmart" or "Parent's Choice" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

        1.    This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells are, among various things, organic, non-GMO, free from artificial flavors,

1

colors, and preservatives, and "great for you."[1] Walmart's representations about its baby food products indicate and lead consumers to believe that they are safe for consumption by infants and young children.

2.      Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"), revealing its findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[2]

3.      Following reports alleging high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, including Walmart's Parent's Choice. However, Parent's Choice refused to cooperate with the investigation. The Subcommittee found this lack of transparency greatly concerning, fearing that they might be obscuring the presence of higher levels of toxic heavy metals in their baby food products than their competitors' products.[3]

4.      In addition to the Subcommittee's investigation, Healthy Babies Bright Futures— an alliance of nonprofit organizations, scientists and donors that design and implement programs

---

[1] *See e.g.*, https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884; https://www.walmart.com/ip/Parent-s-Choice-Stage-3-White-Cheddar-Baby-Snack-1-48-oz-Canister/23623499; https://www.walmart.com/ip/Parent-s-Choice-Toddler-Food-Berry-Baby-Snack-1-oz-Bag/705920946.

[2] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf   (Feb. 4,   2021)   ("Subcommittee Report").

[3] *Id.* at 3.

to reduce babies' exposure to toxic chemicals—tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("Healthy Babies Bright Futures Report").[4] The Healthy Babies Bright Futures Report revealed that several of Walmart's baby food products contained unsafe levels of toxic heavy metals.[5]

5.    Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

6.    Defendant Walmart knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that its baby food products are organic, non-gmo, free from artificial flavors, colors, and preservatives, and "great for you."[6] Yet Defendant chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiffs and members of the Classes that purchased these products in reliance on Defendant's representations.

7.    Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of North Carolina Unfair Trade Practices Act,

---

[4] *See generally* Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("Healthy Babies Bright Futures Report").
[5] *See generally id.*
[6] *See e.g.,* https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884; https://www.walmart.com/ip/Parent-s-Choice-Stage-3-White-Cheddar-Baby-Snack-1-48-oz-Canister/23623499; https://www.walmart.com/ip/Parent-s-Choice-Toddler-Food-Berry-Baby-Snack-1-oz-Bag/705920946.

N.C. Gen. Stat. § 75-1.1 *et seq.,* Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 *et seq.*, Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.,* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, New York False Advertising Act, N.Y. Gen. Bus. Law § 350, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.*

## THE PARTIES

8.     Plaintiff Ryan Sanders ("Plaintiff Sanders") is a citizen of the State of Oklahoma and is a member of the Nationwide Class and the Oklahoma Subclass. Plaintiff Sanders purchased a wide range of products from Walmart's Parent's Choice, including but not limited to, various flavors of fruit pouches, rice cereal, and baby food jars during the applicable statutory period.

9.     Plaintiff Teresa Wilson ("Plaintiff Wilson") is a citizen of the State of Indiana and is a member of the Nationwide Class and the Indiana Subclass. Plaintiff Wilson purchased a variety of Parent's Choice jarred baby food products in multiple fruit flavors during the applicable statutory period.

10.    Plaintiff Susan Canada ("Plaintiff Canada") is a citizen of the State of North Carolina and is a member of the Nationwide Class and the North Carolina Subclass. Plaintiff Canada purchased multiple flavors of Parent's Choice Pouches, Yogurt Bites, Little Munchers, Berry Bites, Stage 2 foods, as well as the Tender Non-GMO Infant Formula, and the Complete Comfort Infant Formula, during the applicable statutory period.

11.    Plaintiff Tabatha Sidi ("Plaintiff Sidi") is a citizen of the State of Utah and is a member of the Nationwide Class and the Utah Subclass. Plaintiff Sidi purchased Parent's Choice Infant Formula during the applicable statutory period.

12.    Plaintiff Jolina Manley ("Plaintiff Manley") is a citizen of the State of Nebraska and is a member of the Nationwide Class and the Nebraska Subclass. Plaintiff Manley purchased all varieties of Parent's Choice baby food products, as well as Parent's Choice Beef, Chicken and Turkey, during the applicable statutory period.

13.    Plaintiff Heather Lowrey ("Plaintiff Lowrey") is a citizen of the State of Texas and is a member of the Nationwide Class and the Texas Subclass. Plaintiff Lowrey purchased a wide range of Parent's Choice baby food products, including but not limited to, various Stage 1 and 2 baby food jars, baby formula, cereal, Little Munchers, and Parent's Choice Pediatric Shakes (various flavors) during the applicable statutory period.

14.    Plaintiff Jessica David ("Plaintiff David") is a citizen of the State of Florida and is a member of the Nationwide Class and the Florida Subclass. Plaintiff David purchased Parent's Choice Puffed Grain Snacks (all flavors), and several flavors of baby food jars, such as Banana, Apple & Strawberry, Butternut Squash, Sweet Potato, Pear, and Carrot during the applicable statutory period.

15.    Plaintiff Ashley Popa ("Plaintiff Popa") is a citizen of the State of Pennsylvania and is a member of the Nationwide Class and the Pennsylvania Subclass. Plaintiff Popa purchased various flavors of Parent's Choice Pouches and Food Tubs during the applicable statutory period.

16.    Plaintiff Cassandra Martell ("Plaintiff Martell") is a citizen of the State of New York and is a member of the Nationwide Class and the New York Subclass. Plaintiff Martell purchased Parent's Choice Formula, Rice Cereal, Baby Food Jars (various flavors) and Pouches (various flavors) during the applicable statutory period.

17.     Plaintiff Leslie Ainsworth ("Plaintiff Ainsworth") is a citizen of the State of Arkansas and is a member of the Nationwide Class and the Arkansas Subclass. Plaintiff Ainsworth purchased various Parent's Choice Yogurt Bites baby food products during the applicable statutory period.

18.     Plaintiffs believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant Walmart's Parent's Choice brand baby food products. Due to the false and misleading claims and omissions by Defendant as described herein, Plaintiffs were unaware that the baby food products sold by Defendant contained any level of toxic heavy metals, and Plaintiffs would not have purchased the products if that information had been fully disclosed.

19.     Defendant Walmart is a citizen of Delaware, where it is incorporated, and Arkansas, where it maintains its principal place of business at 702 S.W. 8th St., Bentonville, AR 72716. Defendant Walmart does business throughout the United States, and manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products online and at brick-and-mortar retail stores under its private brand, "Parent's Choice."

20.     The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. Upon information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff and Class Members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE defendants when ascertained.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of states different from Walmart. Further, greater than two-thirds of the Class Members reside in states other than the state in which Walmart is a citizen.

22.     Venue is proper in this Court and division pursuant to 28 U.S.C. §§ 1391(b)(2) and (d) in that (1) Plaintiff Ainsworth resides in Mississippi County in this judicial district and division, and a substantial part of the events or omissions giving rise to the claims occurred in this district, (2) the State of Arkansas is composed of more than one judicial district, and (3) Defendant (a) is authorized to and does conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products, including the baby food products discussed in this complaint, in this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

**A.     Defendant Falsely Marketed and Advertised its Baby Food Products**

23.     Defendant Walmart manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Parent's Choice label. Walmart makes various representations about its Products, including that they are organic, non-GMO, free from artificial flavors, colors, and preservatives, and "great for

you."[7] Walmart's labeling and representations indicate to consumers that their baby food products are safe for consumption by infants and young children.

24.     The products at issue are various types of Walmart's Parent's Choice baby food products that contain heavy metals, including but not limited to the Parent's Choice products purchased by Plaintiffs ("Products"),[8] specifically:

a.     Parent's Choice Stage 1 (4–6 months) Butternut Squash Baby Food Tub
b.     Parent's Choice Stage 1 (4–6 months) Carrot Baby Food Tub
c.     Parent's Choice Stage 1 (4–6 months) Pear Baby Food Tub
d.     Parent's Choice Stage 1 (4–6 months) Apple Baby Food Tub
e.     Parent's Choice Stage 1 (4–6 months) Sweet Potato
f.     Parent's Choice Stage 2 (6+ months) Banana, Blueberry & Green Beans Jar
g.     Parent's Choice Stage 2 (6+ months) Butternut Squash Jar
h.     Parent's Choice Stage 2 (6+ months) Berries & Beets Pouch
i.     Parent's Choice Stage 2 (6+ months) Organic Whole Grain Macaroni & Cheese
j.     Parent's Choice Stage 2 (6+ months) Organic Amaranth & Fruity Potato Pouch
k.     Parent's Choice Stage 2 (6+ months) Organic Pear, Mango & Spinach Pouch
l.     Parent's Choice Stage 2 (6+ months) Just Mango Fruit Puree Pouch
m.     Parent's Choice Stage 2 (6+ months) Carrot
n.     Parent's Choice Stage 2 (6+ months) Organic Strawberry, Carrot & Quinoa Fruit & Veggie Puree
o.     Parent's Choice Stage 2 (6+ months) Just Pears Fruit Puree Pouch
p.     Parent's Choice Stage 2 (6+ months) Banana Baby Food Tub
q.     Parent's Choice Stage 2 (6+ months) Apple Strawberry Baby Food Tub
r.     Parent's Choice Stage 2 (6+ months) Sweet Potato Baby Food Tub
s.     Parent's Choice Stage 2 (6+ months) Butternut Squash Pineapple Baby Food Tub
t.     Parent's Choice Stage 2 (6+ months) Rice Rusks–Banana
u.     Parent's Choice Stage 2 (6+ months) Rice Rusks–Strawberry
v.     Parent's Choice Stage 2 (6+ months) Organic Rice & Beans Pouch
w.     Parent's Choice Stage 3 (9+ months) Little Hearts Blueberry Puffed Grain Snack
x.     Parent's Choice Stage 3 (9+ months) Little Hearts Strawberry Yogurt Cereal
y.     Parent's Choice Stage 3 (9+ months) White Cheddar Crunchers
z.     Parent's Choice Stage 3 (9+ months) Broccoli & Rice with Cheddar Pouch
aa.     Parent's Choice S'mores Pediatric Shake
bb.     Parent's Choice Vanilla Pediatric Shake
cc.     Parent's Choice Chocolate Pediatric Shake

---

[7] *See e.g.,* https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884; https://www.walmart.com/ip/Parent-s-Choice-Stage-3-White-Cheddar-Baby-Snack-1-48-oz-Canister/23623499; https://www.walmart.com/ip/Parent-s-Choice-Toddler-Food-Berry-Baby-Snack-1-oz-Bag/705920946.
[8] Plaintiffs reserve the right to amend this definition upon completion of discovery.

dd.  Parent's Choice Strawberry Pediatric Shake
ee.  Parent's Choice Vanilla with Fiber Pediatric Shake
ff.  Parent's Choice Toddler Organic Orchard Blend Fruit & Veggie Bites
gg.  Parent's Choice Yogurt Bites
hh.  Parent's Choice Toddler Berry Bites
ii.  Parent's Choice Tender Non-GMO Infant Formula
jj.  Parent's Choice Non-GMO Complete Comfort Infant Formula
kk.  Parent's Choice Stage 1 Rice Baby Cereal
ll.  Parent's Choice Sensitive Stage 1 Oatmeal Baby Cereal

25.  Walmart uses words such as "organic" and categorizes its products by stages such as "Stage 1 – 4 to 6 months", "Stage 2 – 6+ months", "Stage 3 – 9+ months" and "Toddler" to emphasize the foods suitability for consumption by infants and young children.

26.  Walmart's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.  Defendant's Marketing and Advertising Misled and Deceived Consumers**

27.  Parent consumers are drawn to representations such as the ones claimed on Walmart's packaging and labels because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

28.  Walmart's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Walmart's misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

29.  In light of Walmart's marketing, including its professed commitment to providing products that are organic, non-GMO, free from artificial flavors, colors, and preservatives, and

9

"great for you"[9], Walmart knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Walmart knew consumers purchased the Products based on the reasonable expectation that Walmart manufactured the Products in a way that was prescribed by its marketing and advertising.

30.     Walmart intended that Plaintiffs and Class Members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Walmart, as well as its advertising, marketing, and labeling of the Products as organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children.[10]

31.     Based on Walmart's decision to advertise, label, and market its Products as organic, non-GMO free from artificial flavors, colors, and preservatives, "great for you" and safe for consumption by infants and young children, Walmart had a duty to ensure that these statements were true and not misleading. As such, Walmart knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

32.     However, Walmart's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Walmart failed to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Walmart

---

[9]  *See  e.g.,*  https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884;  https://www.walmart.com/ip/Parent-s-Choice-Stage-3-White-Cheddar-Baby-Snack-1-48-oz-Canister/23623499;  https://www.walmart.com/ip/Parent-s-Choice-Toddler-Food-Berry-Baby-Snack-1-oz-Bag/705920946.

[10]  *See  e.g.,*  https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884;  https://www.walmart.com/ip/Parent-s-Choice-Stage-3-White-Cheddar-Baby-Snack-1-48-oz-Canister/23623499;  https://www.walmart.com/ip/Parent-s-Choice-Toddler-Food-Berry-Baby-Snack-1-oz-Bag/705920946.

intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase the Products.

33.     As a result of Walmart's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

34.     Walmart therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.     Heavy Metals**

35.     Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[11] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

36.     The U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[12]

37.     The Healthy Babies Bright Futures Report revealed that the Parent's Choice Organic Strawberry Rice Rusks (Stage 2–6+ months) contains 108 parts per billion ("ppb") of

---

[11] Healthy Babies Bright Futures Report at 6.

[12] Subcommittee Report at 9.

arsenic, 66 ppb of which was inorganic arsenic, 26.9 ppb of lead, 2.4 ppb of cadmium, and 2.05 ppb of mercury.[13]

38.     In addition to the Healthy Babies Bright Futures Report, as mentioned above, the Subcommittee published a report revealing findings that numerous baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[14] As mentioned above, Walmart did not cooperate with the Subcommittee's investigation. Walmart refused to produce any documents showing its internal testing policies, testing results, or how it treats ingredients and/or products that surpass any internal standards.[15]

39.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[16]

40.     Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[17]

a.     **Arsenic**

41.     Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to

---

[13] Healthy Babies Bright Futures Report at 26.
[14] *See* Subcommittee Report at 9.
[15] *Id.* at 43.
[16] *Id.* at 9.
[17] *Id.*

cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[18] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[19]

42.     Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[20] Studies find lasting impacts when young children are exposed to arsenic early in life.[21] There is also no evidence that the effects of arsenic exposure are reversible.[22]

43.     The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled water.[23] However, the Parent's Choice Organic Strawberry Rice Rusks (Stage 2–6+ months) contains 108 ppb of arsenic.[24]

**b.     Cadmium**

44.     Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[25]

45.     Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most

---

[18] Healthy Babies Bright Futures Report at 13.
[19] *Id.*
[20] *Id.*
[21] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."
[22] *Id.*
[23] 21 C.F.R. § 165.110; Subcommittee report at 4.
[24] Healthy Babies Bright Futures Report at 26.
[25] Subcommittee Report at 3.

significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[26]

46.     The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[27] However, the Parent's Choice Little Hearts Strawberry Yogurt Cereal Snack (Stage 3–9+ months) contains 26.1 ppb of cadmium.[28]

**c.     Lead**

47.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[29] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[30]

48.     According to the FDA, lead is especially dangerous to infants and young children.[31] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[32]

49.     The FDA has set the maximum allowable levels in bottle water at 5 ppb of lead.[33] However, the Parent's Choice Organic Strawberry Rice Rusks (Stage 2–6+ months) contains 26.9 ppb of lead.[34]

---

[26] *Id.* at 12.
[27] *Id.* at 4.
[28] Healthy Babies Bright Futures Report at 27.
[29] *Id.* at 13.
[30] Subcommittee Report at 11.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 4.
[34] Healthy Babies Bright Futures Report at 26.

      **d.**      **Mercury**

50.      Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[35] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[36]

51.      Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[37]

52.      The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[38] However, the Parent's Choice Organic Strawberry Rice Rusks (Stage 2–6+ months) contains 2.05 ppb of mercury.[39]

**D.**      **Plaintiffs and Class Members' Reliance was Reasonable**

53.      Plaintiffs and Class Members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

54.      Plaintiffs and Class Members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiffs and Class Members known Walmart's Products actually contained high levels of heavy metals, Plaintiffs and Class Members would not have purchased the Products.

---

[35] *Id.* at 14.
[36] Subcommittee Report at 12.
[37] *Id.* at 12–13.
[38] *Id.* at 4.
[39] Healthy Babies Bright Futures Report at 26.

55.     A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiffs and Class Members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, non-GMO, "great for you", and free from artificial flavors, colors, and preservatives, and did not contain levels of toxic heavy metals.

### CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action individually and on behalf of all other similarly situated Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Classes:

#### Nationwide Class

All persons within the United States who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

#### Florida Subclass

All persons within the State of Florida who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

#### Indiana Subclass

All persons within the State of Indiana who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

#### Nebraska Subclass

All persons within the State of Nebraska who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

#### New York Subclass

All persons within the State of New York who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable

statute of limitations and who have not received a refund or credit for their purchase(s).

**North Carolina Subclass**

All persons within the State of North Carolina who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Oklahoma Subclass**

All persons within the State of Oklahoma who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Pennsylvania Subclass**

All persons within the State of Pennsylvania who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Texas Subclass**

All persons within the State of Texas who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Utah Subclass**

All persons within the State of Utah who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

**Arkansas Subclass**

All persons within the State of Arkansas who purchased Walmart's Parent's Choice Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

57.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who

17

make a timely election to be excluded from this proceeding using the correct protocol for opting

out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family

members.

58.     Plaintiff reserves the right to modify or amend the definition of the proposed

Class and/or add subclasses before the Court determines whether certification is appropriate.

59.     **Numerosity**: The proposed Class and Subclasses are so numerous that joinder of

all members would be impractical. The Products are sold throughout the United States, directly

and by third-party retailers. The number of individuals who purchased the Products during the

relevant time period is at least in the thousands. Accordingly, Class members are so numerous

that their individual joinder herein is impractical. While the precise number of Class members

and their identities are unknown to Plaintiff at this time, these Class members are identifiable and

ascertainable.

60.     **Common Questions Predominate**: There are questions of law and fact common

to the proposed Class and Subclasses that will drive the resolution of this action and will

predominate over questions affecting only individual Class members. These questions include,

but are not limited to, the following:

      a.     Whether Defendant misrepresented material facts and/or failed to disclose

material facts in connection with the packaging, marketing, distribution, and sale of the

Products;

      b.     Whether Defendant's use of false or deceptive packaging and advertising

constituted false or deceptive advertising;

      c.     Whether Defendant engaged in unfair, unlawful and/or fraudulent business

practices;

d.      Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e.      Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f.      Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.      Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

h.      Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.      Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

61.      Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal conduct. Each Class Member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, non-GMO, "great for you", free from artificial flavors, colors, and preservatives, and safe for consumption by infants and young children, and (b) the Products actually contain levels of toxic

heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

62.     **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

63.     **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

64.     **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class Members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class Members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class Members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all

parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
*(on behalf of the Classes)*

65.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as though fully set forth herein.

66.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for breach of express warranty.

67.     Walmart marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Classes.

68.     Walmart expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Products were and are organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children.

69.     Walmart made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Products.

21

70.     Walmart's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and members of the Classes. Plaintiffs and members of the Classes relied on Walmart's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Walmart's Products.

71.     Walmart's Products do not conform to Walmart's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of various heavy toxic metals.

72.     Walmart was on notice of this breach, as Walmart was aware of the included heavy metals in the Products based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

73.     Privity exists because Walmart expressly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

74.     As a direct and proximate result of Walmart's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the products' marketing and advertisements.

75.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SECOND CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
*(on behalf of the Classes)*

76.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as though fully set forth herein.

77.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for breach of implied warranty of merchantability.

78.     Walmart is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Classes.

79.     At all times mentioned herein, Walmart manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and members of the Classes, Walmart impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. Plaintiffs and members of the Classes relied on Walmart's promises and affirmations of fact when they purchased the Products.

80.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Walmart's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

81.     Walmart breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

82.     Walmart was on notice of this breach, as Walmart was aware of the included heavy metals in the Products based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

83.     Privity exists because Walmart impliedly warranted to Plaintiffs and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic and free from artificial flavors, colors, and preservatives, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

84.     As a direct and proximate result of Walmart's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

85.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## THIRD CAUSE OF ACTION
### Fraud by Omission
### *(on behalf of the Classes)*

86.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as though fully set forth herein.

87.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for fraud by omission.

88.     Walmart concealed from and failed to disclose to Plaintiffs and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural

or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

89.     Walmart was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Walmart was in a superior position to know the true state of facts about its products; (2) Walmart was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Walmart knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

90.     The facts concealed or not disclosed by Walmart to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

91.     Plaintiffs and members of the Classes justifiably relied on Walmart's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Walmart.

92.     As a direct and proximate result of Walmart's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

93.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
#### *(on behalf of the Classes)*

94.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as though fully set forth herein.

95.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for negligent misrepresentation.

96.     Walmart marketed the Products in a manner indicating that the Products were and are organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Walmart has made misrepresentations about the Products.

97.     Walmart's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety and quality of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

98.     At all relevant times when such misrepresentations were made, Walmart knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Walmart has no reasonable grounds for believing its misrepresentations were not false and misleading.

99.     Walmart intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading

representations on the Products' packaging by Walmart, as well as its advertising, marketing, and labeling of the Products as organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children.

100.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Walmart's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

101.    Therefore, as a direct and proximate result of Walmart's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

102.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
**Intentional Misrepresentation**
***(on behalf of the Classes)***

103.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as though fully set forth herein.

104.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for intentional misrepresentation.

105.    Walmart marketed the Products in a manner indicating that the Products were and are organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. However, the Products contained, or were at

risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Walmart has made misrepresentations about the Products.

106.    Walmart's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety and quality of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

107.    At all relevant times when such misrepresentations were made, Walmart knew that the representations were misleading, or acted recklessly in making the representations, without regard to the truth.

108.    Walmart intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Walmart, as well as its advertising, marketing, and labeling of the Products as organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children.

109.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Walmart's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

110.    Therefore, as a direct and proximate result of Walmart's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

111.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### SIXTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
#### (*On behalf of the Classes*)

112.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as though fully set forth herein.

113.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for quasi contract, unjust enrichment, and restitution.

114.    As alleged herein, Walmart has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Walmart. Plaintiffs and members of the Classes therefore have been induced by Walmart's misleading and deceptive representations about the Products, and paid more money to Walmart for the Products than they otherwise would and/or should have paid.

115.    Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Walmart has retained monies paid to them by Plaintiffs and members of the Classes.

116.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Walmart.

117.    Therefore, it is inequitable and unjust for Walmart to retain the profit, benefit, or compensation referred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

118.    As a direct and proximate result of Walmart's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Walmart from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CAUSE OF ACTION**
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201 *et seq.***
**(*On behalf of Plaintiff Jessica David and the Georgia Subclass*)**

119.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as if fully set forth herein.

120.    Plaintiff David brings this claim individually and on behalf of the members of the proposed Florida Subclass against Walmart for violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

121.    Plaintiff David and members of the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Walmart are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

122.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

123.    For the reasons discussed herein, Defendant Walmart violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq.* Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead

members of the public, including Plaintiff David and members of the Florida Subclass and other consumers acting reasonably under the circumstances, to their detriment.

124.    At all times mentioned herein, Walmart engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered or sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

125.    Walmart repeatedly advertised on the labels for its Products, on its websites, and through national advertising campaigns, among other things, that its Products were organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. Walmart failed to disclose the material information that its Products contained unsafe levels of toxic heavy metals.

126.    Walmart's representations and omissions were material because they were likely to deceive reasonable consumers and to induce them to purchase Walmart's Products without knowing that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Walmart's unfair and deceptive acts or practices, Plaintiff David and members of the Florida Subclass suffered damages by purchasing Walmart's Products because they would not have purchased Walmart's Products had they known the truth, that the Products contain, or may contain, levels of toxic heavy metals.

127.    Walmart's deceptive trade practices caused Plaintiff David and members of the Florida Subclass to suffer injury in fact and actual damages in the form of the loss or diminishment of value of the Products they purchased, which allowed Walmart to profit at the expense of Plaintiff David and members of the Florida Subclass. The injuries Plaintiff David and members of the Florida Subclass suffered were to legally protected interests. The gravity of the

harm of Defendant Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

128.    Plaintiff David and members of the Florida Subclass seek relief for the injuries they have suffered as a result of Walmart's unfair and deceptive acts and practices, as provided by FDUTPA and applicable law.

### EIGHTH CAUSE OF ACTION
**North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1 *et seq.***
**(*On behalf of Plaintiff Susan Canada and the North Carolina Subclass*)**

129.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as if fully set forth herein.

130.    Plaintiff Canada brings this claim individually and on behalf of the members of the proposed North Carolina Subclass against Walmart for violations of North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*

131.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

132.    Walmart's acts and practices described above were performed in the course of Walmart's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

133.    In the course of its business, Walmart concealed that its Products contained, or were at risk of containing, toxic heavy metals such as arsenic, cadmium, mercury, and lead, and

otherwise engaged in activities with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of its Products.

134.     By misrepresenting that its Products were safe for consumption by infants and young children, and advertising its Products as organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children, Walmart participated in unfair, deceptive, and unconscionable acts that violated the NCUDTPA.

135.     In light of Walmart's marketing, including its professed commitment to providing products that are organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children, Walmart knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risk to humans, and particularly to infants and young children. Walmart therefore was aware, or should have been aware, of the presence of toxic heavy metals in its Products. However, Walmart concealed the fact that its Products contain, or may contain, levels of toxic heavy metals.

136.     By failing to disclose and by actively concealing the presence of, or risk of, toxic heavy metals in its Products, and by marketing its Products as o organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children, Walmart engaged in unfair, unconscionable, and deceptive business practices in violation of the NCUDTPA.

137.     Walmart intentionally and knowingly misrepresented material facts regarding the Products with an intent to mislead Plaintiff and members of the proposed North Carolina Subclass.

138.     As a direct and proximate result of Walmart's violations of the NCUDTPA, Plaintiff and members of the proposed North Carolina Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

139.     Plaintiff Canada and members of the North Carolina Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### NINTH CAUSE OF ACTION
**Texas Deceptive Trade Practices and Consumer Protection Act**
**Tex. Bus. & Com. Code §§ 17.41 *et seq.***
**(*On behalf of Plaintiff Heather Lowrey and the Texas Subclass*)**

140.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as if fully set forth herein.

141.     Plaintiff Lowrey brings this claim individually and on behalf of the members of the proposed Texas Subclass against Walmart for violations of Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA"), F Tex. Bus. & Com. Code §§ 17.41 *et seq*.

142.     Plaintiff Lowrey and members of the Texas Subclass intend to assert a claim under the TDTPA against Walmart. Plaintiff and members of the Texas Subclass intend to provide written notice of the specific complaint and damages to Walmart in accordance with Tex. Bus. & Com. Code § 17.05. Subject to the response, if any, by Walmart within 60 days of

the notice, Plaintiff Lowrey, individually and on behalf of the Texas Subclass, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the TDTPA.

143.   At all material times herein, Walmart engaged in "trade" or "commerce" as defined by the TDTPA.

144.   The TDTPA, Tex. Bus. & Com. Code § 17.46, makes it unlawful to commit "[f]alse, misleading, and deceptive acts or practices in the conduct of any trade or commerce."

145.   For the reasons discussed herein, Walmart violated and continues to violate the TDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by TDTPA §§ 17.41 *et seq.* Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

146.   Defendant Walmart repeatedly marketed and advertised on the labels for the Products, on its website, among other items, that the Products were and are organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. Walmart failed to disclose the material information that the Products contained unsafe levels of toxic heavy metals.

147.   Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase its Products without being aware that the Products contained unsafe levels of toxic heavy metals. As a direct and proximate result of Walmart's unfair and deceptive acts or practices, Plaintiff Lowrey and members of the Texas Subclass suffered damages by purchasing Walmart's Products because they would not have purchased the Products had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

148.    Walmart's deceptive trade practices caused injury in fact and actual damages Plaintiff Lowrey and members of the Texas Subclass in the form of the loss or diminishment of value of the Products Plaintiff Lowrey and members of the Texas Subclass purchased, which allowed Walmart to profit at the expense of Plaintiff Lowrey and members of the Texas Subclass. The injuries Plaintiff Lowrey and members of the Texas Subclass were to legally protected interests. The gravity of the harm of Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

149.    Plaintiff Lowrey and members of the Texas Subclass seek relief for the injuries they have suffered as a result of Walmart's unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

## TENTH CAUSE OF ACTION
### New York Deceptive Acts and Practices Act
### N.Y. Gen. Bus. Law § 349
### (*On behalf of Plaintiff Cassandra Martell and the New York Subclass*)

150.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as if fully set forth herein.

151.    Plaintiff Martell brings this claim individually and on behalf of the members of the proposed New York Subclass against Walmart for violations of New York Deceptive Acts and Practices Act ("NYDAPA"). N.Y. Gen. Bus. Law § 349.

152.    Plaintiff Martell, members of the New York Subclass, and Defendant Walmart are "persons" under NYDAPA. N.Y. Gen. Bus. Law § 349(h).

153.    Walmart's actions as set forth herein occurred in the conduct of trade or commerce under NYDAPA.

36

154.    NYDAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Walmart's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

155.    In the course of business, Walmart made affirmative misrepresentations that conveyed to Plaintiff Martell and members of the New York Subclass that the Walmart baby food Products were organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. Walmart, however, concealed and suppressed material facts concerning the Products, including that they contained unsafe levels of heavy metals.

156.    Plaintiff Martell and members of the New York Subclass had no way of discerning that Walmart's representations were false and misleading without conducting their own scientific tests.

157.    Walmart thus violated NYDAPA by making statements, when considered as a whole from the perspective of a reasonable consumer, that conveyed that its Products were organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children. Walmart also failed to disclose and warn that its Products were unsafe and unsuitable for consumption by infants and young children, and that the Products contained levels of heavy metals.

158.    Walmart intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding its Products with intent to mislead Plaintiff Martell and members of the New York Subclass.

159.    Walmart knew or should have known that their conduct violated NYDAPA, and owed a duty to Plaintiff Martell and members of the New York Subclass to disclose the true and unsafe nature of its Products.

160.    Walmart's concealment of the level of heavy metals in its Products was material to Plaintiff Martell and members of the New York Subclass, as they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

161.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Martell and members of the New York Subclass, about the safety of its Products. Plaintiff Martell and members of the New York Subclass would not have purchased the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained levels of toxic heavy metals.

162.    Walmart's violations present a continuing risk to Plaintiff Martell and members of the New York Subclass as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

163.    As a direct and proximate result of Walmart's misrepresentations, concealment of, and failure to disclose material information, as well as Walmart's deceptive and unfair acts and practices made during the course of Walmart's business, Plaintiff Martell and members of the New York Subclass suffered ascertainable loss and actual damages.

164.    Plaintiff Martell and members of the New York Subclass seek relief for the injuries they have suffered as a result of Walmart's unfair and deceptive acts and practices, as provided by NYDAPA and applicable law.

## ELEVENTH CAUSE OF ACTION
### New York False Advertising Act
### N.Y. Gen. Bus. Law § 350
#### (On behalf of Plaintiff Martell and the New York Subclass)

165.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as if fully set forth herein.

166.    Plaintiff Martell brings this claim individually and on behalf of the members of the proposed New York Subclass against Walmart for violations of New York False Advertising Act ("NYFAA"). N.Y. Gen. Bus. Law § 350.

167.    The NYFAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350(a).

168.    Walmart caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known or should've been known through the exercise of reasonable care by Walmart, to be untrue and misleading.

169.    Walmart made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive consumers concerning its Products. Specifically, Walmart intentionally concealed and suppressed material facts concerning the safety of its Products, and that they contained, or were at risk of containing, levels of toxic heavy

metals. Walmart intentionally and grossly defrauded and mislead Plaintiff Martell and members of the New York Subclass concerning the true and unsafe nature of its Products.

170.    The misrepresentations and omissions regarding the Products set forth herein were material and likely to deceive a reasonable consumer, as they relate to the safety and quality of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

171.    Walmart intentionally and knowingly misrepresented material facts regarding its Products with intent to mislead Plaintiff Martell and members of the New York Subclass.

172.    Walmart's false advertising was likely to and did in fact deceive reasonably consumers, including Plaintiff Martell and members of the New York Subclass, about the true nature of the safety and quality of its Products. Plaintiff Martell and members of the New York Subclass would not have purchased the Products had they known the Products had they known that the Products were unsafe for consumption by infants and young children, and that they contained levels of toxic heavy metals.

173.    Walmart's violations present a continuing risk to Plaintiff Martell and members of the New York Subclass as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

174.    As a direct and proximate result of Walmart's misrepresentations, concealment of, and failure to disclose material information, as well as Walmart's deceptive and unfair acts and practices made during the course of Walmart's business, Plaintiff Martell and members of the New York Subclass suffered ascertainable loss and actual damages.

175.   Plaintiff Martell and members of the New York Subclass seek relief for the injuries they have suffered as a result of Walmart's unfair and deceptive acts and practices, as provided by NYFAA and applicable law.

**TWELFTH CAUSE OF ACTION**
**Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §§ 201-1, *et seq***
***(On behalf of Plaintiff Popa and the Pennsylvania Subclass)***

176.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1-64, as if fully set forth herein.

177.   Plaintiff Popa brings this claim individually and on behalf of the members of the proposed Pennsylvania Subclass against Defendant for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*

178.   Plaintiff Popa, Defendant Walmart, and members of the Pennsylvania Subclass are "Person[s]" within the meaning of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(2).

179.   73 P.S. § 201-3 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ...."

180.   Walmart's business acts and practices alleged herein constituted deceptive acts or practices under the 73 P.S. § 201, *et seq.*   Specifically, Walmart has violated the following subsections of the UTPCPL:

      a.   73 P.S. § 201-2(4)(v) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Walmart has represented and continues to represent that the Products have characteristics (i.e., that the products are organic, non-GMO, free from artificial flavors, colors, and preservatives,

41

"great for you", and safe for consumption by infants and young children) that they do not have. Therefore, Walmart has violated 73 P.S. § 201-2(4)(v).

      b.     73 P.S. § 201-2(4)(vii) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Walmart has represented and continues to represent that the Products are of a particular standard (i.e., the products are organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children) which they do not possess. Therefore, Walmart has violated 73 PS § 201-2(4)(vii).

      c.     73 P.S. § 201-2(4)(ix) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as organic, non-GMO, free from artificial flavors, colors, and preservatives, "great for you", and safe for consumption by infants and young children but not intending to sell the Products as such, Walmart has violated 73 P.S. § 201-2(4)(ix).

181.    Walmart has known or reasonably should have known that the Products contained unsafe levels of toxic heavy metals, and that Plaintiff Popa and other members of the Pennsylvania Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

182.    Walmart has intentionally and knowingly misrepresented material facts with an intent to mislead Plaintiff Popa and the Pennsylvania Subclass.

183.    The above unlawful, unfair, and deceptive acts and practices by Walmart were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff

Popa and the Pennsylvania Subclass that they could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

184.   Walmart's representations were material to Plaintiff Popa and the Pennsylvania Subclass because they relate to the quality and safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

185.   As a direct and proximate cause of Walmart's conduct, Plaintiff Popa and members of the Pennsylvania Subclass suffered damages as alleged above.

186.   Plaintiff Popa and the Pennsylvania Subclass seek an order enjoining Defendant Walmart's deceptive acts and practices, and awarding attorneys' fees, and any other just and proper relief available under the UTPCPL.

187.   In addition to or in lieu of actual damages, Plaintiff Popa and the Pennsylvania Subclass seek statutory damages for each injury and violation which has occurred.

188.   Plaintiff Popa and the Pennsylvania Subclass seek relief under 73 P.S. § 201-9.2, including, but not limited to, injunctive relief, actual damages or $100 per Class Member, whichever is greater, treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for following relief:

A.   Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.      A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.      An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.      An order directing Defendant to engage in a corrective advertising campaign;

F.      An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

G.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: April 27, 2021

**CARNEY BATES & PULLIAM PLLC**

By: _____

Hank Bates
519 West 7th St.
Little Rock, AR 72201
Tel:    501-312-8500
hbates@cbplaw.com

**CARLSON LYNCH LLP**
Todd D. Carpenter (to apply pro hac vice)
Scott G. Braden (to apply pro hac vice)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:    619-762-1900
Fax:    619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown (to apply pro hac vice)
Michael A. Tompkins (to apply pro hac vice)
Brett R. Cohen (to apply pro hac vice)
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:    516-873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs*