## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

LESLIE AINSWORTH, TYLER BAKER,
CELIA BRUNO, ANA BUTKUS, SUSAN
CANADA, EMILY CATHEY, BRANDI
COLEMAN, JESSICA DAVID, FELICIA
DYKES, DOMINICK GROSSI, GALENA
GUTIERREZ, SAMMI HOBDY, APRIL
LOCKHART, HEATHER LOWREY,
JOLINA MANLEY, CASSANDRA
MARTELL, BRITTANY MARTIN,
TIFFANY NEAL, ROBERT PARTELLO,
ASHLEY POPA, RYAN SANDERS, VITO
SCAROLA, JULIE SECRIST, TABATHA
SIDI, MARGO TENZO, MEGAN
TROYER, BRITTANY WALLACE,
TERESSA WILSON AND AMBER
WRIGHT individually and on behalf of all
others similarly situated,

            Plaintiffs,

    v.

WALMART, INC.; and DOES 1 through 10,
inclusive,

            Defendants.

Case No.: 3:21-cv-00082-DPM

Hon. D.P. Marshall, Jr.

**CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiffs Leslie Ainsworth, Tyler Baker, Celia Bruno, Ana Butkus, Susan Canada, Emily

Cathey, Brandi Coleman, Jessica David, Felicia Dykes, Dominick Grossi, Galena Gutierrez,

Sammi Hobdy, April Lockhart, Heather Lowrey, Jolina Manley, Cassandra Martell, Brittany

Martin, Tiffany Neal, Robert Partello, Ashley Popa, Ryan Sanders, Vito Scarola, Julie Secrist,

Tabatha Sidi, Margo Tenzo, Megan Troyer, Brittany Wallace, Teressa Wilson and Amber Wright

(collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and

through their undersigned attorneys, file this Consolidated Amended Class Action Complaint

("Complaint") against Defendant Walmart, Inc. ("Walmart" or "Defendant") for its misleading, deceptive, unfair, and/or false representations, omissions, warranties, and business practices concerning Walmart's baby food products ("Walmart Baby Food Products")[1] sold through the United States, which contain (or have a material risk of containing) certain toxic heavy metals. Plaintiffs allege the following based upon personal knowledge as to themselves and their own actions and upon information and belief and investigation of their counsel as to all other matters. Given the concealed nature of Walmart's conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

## NATURE OF THE ACTION

1.     Toxic heavy metals, such as arsenic, lead, cadmium, and mercury, have no health benefit.  In short, these toxic heavy metals are unfit for consumption. Both the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared toxic heavy metals dangerous to human health, particularly to babies and children, who are most vulnerable to its neurotoxic effects.

2.     Babies' developing brains are exceptionally sensitive to injury caused by toxic heavy metals and several developmental processes have been shown to be highly vulnerable to heavy metal toxicity.  Even low levels of exposure to toxic heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.

---

[1]     The Walmart Baby Food Product include, but are not limited to the following Parent's Choice brand foods, in varying flavors:  Infant Formula, Stage 1 (4-6 Months) Foods (Cereals, Tubs, Jarred Foods), Stage 2 (6+ Months) Foods (Jarred, Pouches, Tubs, Rice Rusks, Puffed Grain Snacks), Stage 3 (9+ Months) Foods (Yogurt Bites, Little Hearts Cereal Snacks, Crunchers, Pouches), Pediatric Shakes, Toddler Foods (Finger Foods, Bites and Pouches), Arrowroot Cookies and Teething Ring Cookies.  Plaintiffs reserve their right to revise the list of relevant products after Walmart produces relevant discovery in this matter.

3.      Parents and other caregivers, including Plaintiffs and members of the Classes (defined below), reasonably understood and believed that the baby food they purchase for their babies from Walmart would be healthy, nutritious, and safe for consumption by infants and young children. Alarmingly, they were wrong.

4.      On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "Subcommittee") released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury."[2]  In it, the Subcommittee found that numerous baby foods sold in the United States are tainted with toxic heavy metals.[3]  Notably, Walmart refused to cooperate with the Subcommittee's investigation and participate in the Subcommittee's testing of its products despite explicit requests to do so. Walmart refused to produce any documents showing its internal testing policies, testing results, or how it treats ingredients and/or products that surpass any internal standards.[4]  The Subcommittee found this lack of transparency gravely concerning, fearing that Walmart might be obscuring the presence of higher levels of toxic heavy metals in its baby food products than in its competitors' products.[5]  As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[6]

---

[2]      Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report (the "Subcommittee Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, Feb. 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed November 12, 2021).

[3]      *See* Subcommittee Report at 9.

[4]      *Id.* at 43.

[5]      *Id.* at 3.

[6]      *Id.* at 9.

5.       As to Walmart Baby Food Products, the Subcommittee Report relied on the prior investigation of Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals—which tested a variety of baby foods to determine the levels of heavy metals contained in their products and published their report in or around October 2019 ("HBBF Report").[7] The HBBF Report revealed that several of Walmart's baby food products contained unsafe levels of toxic heavy metals.[8]

6.       The Subcommittee published a follow up report on September 29, 2021 ("Subcommittee Report No. 2") with new disclosures about the levels of toxic heavy metals in baby foods.[9] In this follow up report, Walmart finally cooperated with the investigation and disclosed its testing standards. The Subcommittee stated that Walmart provided documents revealing a "concerning lack of attention" to levels of toxic heavy metals in its baby food and that it abandoned its previously more protective testing standards.[10]  The investigation also revealed that Walmart does not appear to conduct any testing of its baby food for toxic heavy metals.  Instead, Walmart sets maximum levels for its manufacturer and requires the manufacturer to "self-certify" that the products meet those levels without verifying itself that the products meet Walmart's standards.[11]

---

[7]       *See generally* Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("HBBF Report").

[8]       See generally id.

[9]       *See New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th                                                                                                                                Cong., https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf (Sept. 29, 2021) ("Subcommittee Report No. 2").

[10]      *Id.*

[11]      *Id.* at 21.

7.      Reasonable parents, like Plaintiffs, trust manufacturers, like Defendant, to sell baby food that is healthy, nutritious, safe for consumption, and free from harmful toxins and contaminants.  They certainly expect the food they feed their infants and toddlers to not have elevated levels of heavy metals, which are known to have significant and dangerous health consequences. Walmart labeled, packaged, and marketed Walmart Baby Food Products as "Parent's Choice"—healthy, nutritious baby food that is "organic," "naturally flavored," "non-GMO," "great for you," and safe for consumption by infants and young children and did not disclose the presence of heavy metals in those products.

8.      As a result of Walmart's misleading, deceptive, unfair, and/or false business practices and warranties, tens of thousands of consumers paid for Walmart Baby Food Products that they thought were safe, healthy, and nutritious, but which actually contained (or had a material risk of containing) heavy metals.  Meanwhile, Walmart profited from reasonable consumers who paid for Walmart Baby Food Products that both misrepresented and omitted material information as to the foods' true quality and value.  Walmart continues to wrongfully induce consumers to purchase Walmart Baby Food Products to this day.

9.      The presence of heavy metals rendered the Walmart Baby Food Products unfit for their intended purpose and use, defective, worthless, and denied consumers the benefit of their bargain.

10.     Given the health risks, the presence of toxic heavy metals in food, especially in baby food, is material to consumers.  No consumer would knowingly purchase baby foods for its child from a retailer that allowed its own private label baby foods to contain (or have a material risk of containing) elevated amounts of arsenic, lead, cadmium, or mercury.

11.     Consumers lack the scientific knowledge necessary to determine whether Walmart

Baby Food Products do in fact contain (or have a material risk of containing) heavy metals or to ascertain the true nature of the ingredients and quality of Walmart Baby Food Products. Reasonable consumers therefore must and do rely on Walmart to properly and fully disclose what Walmart Baby Food Products contain.

12.     Yet, Walmart knowingly sold baby foods containing elevated levels of toxic heavy metals, and despite having actual knowledge of this fact, did not disclose the presence of toxic heavy metals in its baby foods to consumers.

13.     Accordingly, Plaintiffs bring this suit on behalf of themselves and the Classes of similarly situated individuals (defined below) seeking monetary and injunctive relief resulting from Walmart's sale of baby foods that contain (or have material risk of containing) toxic heavy metals for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi-contract, unjust enrichment, and restitution, and for violations of the consumer protection statutes of the states identified below.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and most Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

15.     The Court has personal jurisdiction over Defendant. Walmart transacted business and maintained substantial contact throughout the United States, including in this District. Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

16.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over Walmart. Specifically, Walmart's decision-making regarding the marketing of the baby foods at issue, including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District. Furthermore, Defendant is headquartered in this District.

## THE PARTIES

17.     Plaintiff Leslie Ainsworth ("Plaintiff Ainsworth") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arkansas.  Between 2013 and 2021, Plaintiff Ainsworth purchased several types of the Walmart Baby Food Products from Walmart stores in Arkansas to feed her children, including but not limited to:  Stage 3 Yogurt Bites (Peach, Vanilla, Banana, Strawberry, Mixed Berry, Orange Cream, Cherry Vanilla, and Banana Strawberry).

18.     Plaintiff Tyler Baker ("Plaintiff Baker") is a natural person and is, and at all times relevant hereto, has been a citizen and resident of the State of Vermont and the State of Kentucky. Between early 2018 and late 2019, Plaintiff Baker purchased several types of the Walmart Baby Food Products from Walmart stores in Vermont and Kentucky to feed his child, including but not limited to: Stage 1 Tubs (Butternut Squash and Carrot); Stage 2 Jarred Foods (Mango); Stage 2 Pouches (Organic Green Bean Medley, Mango Banana & Kale, Berries & Oats, Just Banana, Organic Sweet Potato Apple & Grape, and & Cinnamon); Stage 2 Rice Rusks (Blueberry and Organic Apple); Stage 3 Crunchers (White Cheddar); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Sweet Potato, Blueberry, Strawberry Apple, and Banana); Stage 3 Yogurt Bites (Organic Vanilla and Mixed Berry); and Toddler Pouches (Tropical and Banana Berry Burst ).

19. Plaintiff Celia Bruno ("Plaintiff Bruno") is a natural person and is, and at all times relevant hereto, has been a citizen and resident of the State of Indiana.  Between 2020 and early 2021, Plaintiff Bruno purchased several types of the Walmart Baby Food Products from Walmart stores in Indiana and the State of Illinois to feed her child, including but not limited to:  Stage 1 Rice Baby Cereal; Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Butternut Squash), Stage 2 Pouches (Green Bean Medley, Butternut Squash, Sweet Potato, Apple & Grape, Mango, Apple & Broccoli); Stage 3 Pouches (Pea & White Chicken Puree, Chicken Noodle Puree, Sweet Potato & Turkey Puree); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Blueberry, Banana, Sweet Potato, Apple, Peach Mango, Strawberry Yogurt); Stage 3 Yogurt Bites (Banana, Strawberry, and Mixed Berry); and Stage 3 Crunchers (White Cheddar).  On April 13, 2021, Plaintiff Bruno sent a letter to Walmart complying with Ind. Code § 24-5-0.5-5(a).

20. Plaintiff Ana Butkus ("Plaintiff Butkus") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Kentucky.  Between 2020 and early 2021, Plaintiff Butkus purchased several types of the Walmart Baby Food Products from Walmart stores in Kentucky to feed her child, including but not limited to:  Stage 1 Rice Baby Cereal, Stage 2 Rice Rusks (Strawberry, Blueberry), Stage 1 Jarred Foods (Pears, Butternut Squash, Carrot), Stage 2 Pouches (Just Banana, Green Bean Medley, Root Veggies & Apple, Strawberry, Sweet Potato, Apple & Grape, Butternut Squash, Pear Mango & Spinach, Mango Apple & Broccoli, Sweet Potato & Cinnamon), Stage 2 Jarred Foods (Sweet Potato, Banana, Mango, Banana Apple Pear, Green Bean, Banana & Mixed Berries, Carrots Corn & Pumpkin), Stage 3 Little Hearts Puffed Grain/Cereal Snack (Blueberry, Banana, Sweet Potato, Strawberry Apple, Strawberry Yogurt), and Yogurt Bites (Banana, Strawberry).

21.     Plaintiff Emily Cathey ("Plaintiff Cathey") is a natural person and is, and at all times relevant hereto, has been a citizen and resident of the State of Missouri.  Between 2010 and 2017, Plaintiff Cathey purchased several types of the Walmart Baby Food Products from Walmart stores in Missouri to feed his child, including but not limited to:  Stage 1 Oatmeal Baby Cereal; Stage 2 Jars (Banana, Blueberry, and Green Bean); Stage 2 Tubs (Banana, Carrot, Sweet Potato); Stage 3 Pouches (Broccoli & Rice with Cheddar); Stage 2 Rice Rusks (Banana, Strawberry); Stage 3 Puffed Grain/Cereal Snacks (Strawberry Yogurt, Strawberry, Banana); Stage 3 Yogurt Bites (Banana, Strawberry, and Mixed Berry); and Stage 3 Crunchers (White Cheddar).

22.     Plaintiff Susan Canada ("Plaintiff Canada") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of North Carolina.  Between 2017 and 2019, Plaintiff Canada purchased several types of the Walmart Baby Food Products from Walmart stores in North Carolina to feed her child, including but not limited to:  Infant Formula (Complete Comfort and Tender Non-GMO); Stage 1 Rice Baby Cereal; Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Peas, Blueberry, and Butternut Squash); Stage 2 Jarred Foods (Chicken and Gravy, Turkey and Gravy, Macaroni and Cheese, Chicken and Vegetables, and Spaghetti); Toddler Berry Bites; and Teething Ring Cookies.

23.     Plaintiff Brandi Coleman ("Plaintiff Coleman") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arkansas.  In early 2021, Plaintiff Coleman repeatedly purchased certain Walmart Baby Food Products from Walmart stores in Arkansas to feed her children, including but not limited to:  Stage 1 Rice Baby Cereal and Oatmeal Baby Cereal; and Stage 2 Rice Rusks (Strawberry).

24.     Plaintiff Jessica David ("Plaintiff Jessica David") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Florida.  Between 2014 and 2017, Plaintiff David purchased several types of the Walmart Baby Food Products from Walmart stores in Florida to feed her child, including but not limited to:  Infant Formula (Complete Comfort and Tender Non-GMO); Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Peas, Spinach, Berries, Sweet Potato, Corn, Mango, Butternut Squash, and Green Beans); Stage 2 Pouches (Just Pear, Banana Berry Burst, Berry and Oats, Pear Banana Berry and Greek Yogurt, Apple Strawberry and Oat, Sweet Potato, Banana Pear Mango and Orange, and Mango and Pumpkin); Stage 2 Jarred Foods (Turkey and Gravy, Beef and Gravy, Ham and Gravy, Macaroni and Cheese, Beef and Beans, Chicken and Vegetables, and Ravioli); Stage 3 Yogurt Bites (Peach, Banana, Strawberry, Mixed Berry, Orange Cream, Cherry Vanilla, and Vanilla); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Banana Strawberry, Banana, Peach, Blueberry, Strawberry, Strawberry Apple, Sweet Potato, Peach Mango, Vanilla Yogurt, and Strawberry Yogurt); and Teething Ring Cookies.

25.     Plaintiff Felicia Dykes ("Plaintiff Dykes") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Georgia.  Between January 2021 and February 2021, Plaintiff Dykes purchased several types of the Walmart Baby Food Products from Walmart stores in Georgia to feed her child including but not limited to:  Stage 1 Rice Baby Cereal; Stage 1 Tubs (Carrot, Pear, Apple, and Sweet Potato); Stage 2 Pouches (Just Mango and Carrot); Stage 2 Rice Rusks (Banana and Strawberry); Stage 3 Little Hearts Puffed Grain/Cereal Snack (Blueberry); Toddler Organic Orchard Blend Fruit & Veggie Bites; Stage 3 Yogurt Bites; and Toddler Berry Bites.

26.     Plaintiff Dominick Grossi ("Plaintiff Grossi") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the Commonwealth of Pennsylvania. Between 2016 and 2017, Plaintiff Grossi purchased several types of the Walmart Baby Food Products from Walmart stores in Pennsylvania to feed his child including but not limited to: Infant Formula (Tender Non-GMO and Non-GMO Complete Comfort); Stage 1 Baby Cereal (Sensitive Oatmeal) Stage 1 Tubs (Carrot, Pear, Apple, and Sweet Potato);  Stage 2 Jarred Foods (Blueberry & Green Beans, Organic Whole Grain Macaroni & Cheese); Stage 2 Pouches (Organic Pear, Mango & Spinach, Carrot, and Just Pears); Stage 2 Tubs (Banana, Apple Strawberry, and Sweet Potato); Stage 2 Rice Rusks (Banana and Strawberry); and Stage 3 Little Hearts Puffed Grain/Cereal Snack (Blueberry and Strawberry Yogurt).

27.     Plaintiff Galena Gutierrez ("Plaintiff Gutierrez") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the Commonwealth of Massachusetts. Between September 2020 and February 2021, Plaintiff Gutierrez purchased several types of the Walmart Baby Food Products from Walmart stores in Massachusetts to feed her child, including but not limited to:  Infant Formula; Stage 1 Cereal (Rice and Oatmeal); Stage 2 Pouches (Organic Rice & Beans); Stage 3 Yogurt Bites; and Toddler Berry Bites.

28.     Plaintiff Sammi Hobdy ("Plaintiff Hobdy") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Alabama.  Between 2020 and early 2021, Plaintiff Hobdy purchased several types of the Walmart Baby Food Products from Walmart stores in Alabama to feed her child, including but not limited to: Stage 1 Rice Baby Cereal, Stage 1 Jars (Apple, Pears), Stage 1 Tubs (Butternut Squash), Stage 2 Rice Rusks (Blueberry, Organic Apple), Stage 2 Tubs (Sweet Potato, Apple Strawberry), Stage 2 Jars (Mango, Mixed Vegetables, Green Bean, Apple & Spinach); Stage 2 Pouches (Just Apple,

Organic Green Bean Medley, Organic Strawberry, Carrot & Quinoa, Organic Sweet Potato, Apple & Grape, Organic Pear, Mango & Spinach, Sweet Potato & Cinnamon); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Sweet Potato, Strawberry Apple, Peach Mango); and Stage 3 Pouches (Pea & White Chicken Puree, Chicken Noodle Puree, Sweet Potato & Turkey Puree). On April 13, 2021, Plaintiff Hobdy sent a letter to Walmart complying with Ala. Code § 8-19-10(e).

29.     Plaintiff April Lockhart ("Lockhart") is a natural person and is a citizen and resident of the State of Kansas and previously was a citizen and resident of the State of New Mexico and State of California.  Between 2015 to 2019, Plaintiff Lockhart purchased several types of the Walmart Baby Food Products from Walmart in California and in New Mexico to feed her children, including but not limited to:  Stage 2 Pouches (Berries & Beets, Organic Amaranth & Fruity Potato, Carrot, and Organic Strawberry, Carrot & Quinoa); and Stage 2 Rice Rusks (Banana and Strawberry).

30.     Plaintiff Heather Lowrey ("Plaintiff Lowrey") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Texas.  Between 2015 and 2019, Plaintiff Lowrey purchased several types of the Walmart Baby Food Products from Walmart stores in Texas to feed her child, including but not limited to:  Infant Formula (Infant and Gentle); Stage 1 Cereals (Rice, Oatmeal and Barley); Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Peas, Spinach, Berries, and Fruit and Veggie); Stage 2 Pouches (Just Pear, Banana Berry Burst, Berry Banana, Pear Banana Berry and Greek Yogurt, Apple Strawberry and Oat, and Tropical Burst); Stage 2 Jarred Foods (Chicken and Gravy, Turkey and Gravy, Beef and Gravy, Ham and Gravy, Macaroni and Cheese, Beef and Beans, Beef and Peas, Chicken and Vegetables, Spaghetti, and Ravioli); Stage 2 Rice Rusks (Banana, Strawberry and

12

Apple); Stage 3 Toddler Milk Drink; Stage 3 Yogurt Bites (Banana, Strawberry, Mixed Berry, Orange Cream, Cherry Vanilla, and Vanilla); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Banana, Peach, Blueberry, Strawberry, Strawberry Apple, Sweet Potato, Peach Mango, Vanilla Yogurt, and Strawberry Yogurt); Stage 3 Crunchies (Veggie, Cheddar, White Cheddar, Spinach Cheddar, Veggie Ranch); Toddler Finger Foods (Chicken and Vegetable Pasta Stars, Chicken Vegetables and Rice, Ravioli Pasta, Spaghetti Pasta, Beef and Tomato Pasta, and Macaroni and Cheese); Teething Ring Cookies; Arrowroot Cookies; Rice Cakes with Fruit; Freezer Pops (Grape, Wild Berry, Orange, and Cherry); Pediatric Shakes (Chocolate); and Electrolyte Solution (Strawberry and Orange).

31.     Plaintiff Jolina Manley ("Plaintiff Manley") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Nebraska.  Between 2010 and 2021, Plaintiff Manley purchased several types of the Walmart Baby Food Products from Walmart stores in Nebraska to feed her children, including but not limited to:  Stage 1 Jarred Foods (Apples, Bananas, Pears, Berries, Mango, and Blueberry) and Stage 2 Jarred Foods (Turkey and Gravy, Chicken and Gravy, Beef and Gravy, Beef and Peas, and Chicken and Vegetables).

32.     Plaintiff Cassandra Martell ("Plaintiff Martell") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of New York.  Between 2013 and 2017, Plaintiff Martell purchased several types of the Walmart Baby Food Products from Walmart stores in New York to feed her child, including but not limited to:  Infant Formula; Stage 1 Baby Cereal (Rice and Oatmeal); Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Peas, Berries, Sweet Potato, and Mango); Stage 2 Jarred Foods (Chicken and Gravy, Turkey and Gravy, Beef and Gravy, Ham and Gravy, Macaroni and Cheese, Beef and

Beans, Chicken and Vegetables, Spaghetti, Banana Apple and Pear, Apple and Strawberry, Butternut Squash and Pineapple, Sweet Potato, Apple Strawberry and Banana, and Banana); Stage 3 Yogurt Bites (Peach, Banana, Strawberry, Mixed Berry, Orange Cream, Cherry Vanilla, Vanilla, and Banana Strawberry); and Teething Ring Cookies.

33.     Plaintiff Brittany Martin ("Plaintiff Martin") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Alabama.  Between 2020 and early 2021, Plaintiff Martin purchased several types of the Walmart Baby Food Products from Walmart stores in Alabama to feed her child, including but not limited to:  Stage 1 Jarred Foods (Apples, Bananas, Carrots,), and Stage 2 Jarred Foods (Apples, Green Bean, Banana, Carrots, Banana & Mixed Berries).  On April 13, 2021, Plaintiff Martin sent a letter to Walmart complying with Ala. Code § 8-19-10(e).

34.     Plaintiff Tiffany Neal ("Plaintiff Neal") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Arkansas.  Throughout 2019, Plaintiff Neal purchased several types of the Walmart Baby Food Products from a Walmart store in Searcy, Arkansas to feed her child, including but not limited to:  Stage 2 Rice Rusks (Blueberry, Strawberry and Apple). Plaintiff Neal also purchased jarred Walmart Baby Food Products from a Walmart store in Helena, Arkansas in March 2021, including but not limited to Stage 1 Jarred Foods (Banana Apple and Pear, Apple and Banana, and Mixed Berries).

35.     Plaintiff Robert Partello ("Plaintiff Partello") is a natural person and is, and at all times relevant hereto, has been a citizen and resident of the State of New York.  Between 2019 and 2020, Plaintiff Partello purchased several types of the Walmart Baby Food Products from Walmart stores in New York to feed his child, including but not limited to:  Stage 1 Oatmeal Baby Cereal; Stage 1 Jars (Banana, Blueberry, Apple, Strawberry, Pear, Butternut Squash, and

14

Carrot); Stage 2 Pouches (Banana, Apple, Green Bean, Root Veggies & Apple, Strawberry, Carrot, Quinoa, Sweet Potato, Butternut Squash, Pear, Mango, Spinach, and Broccoli); Stage 3 Little Heart Puffed Grain/Cereal Snacks (Blueberry, Banana, Strawberry, Strawberry Apple); Stage 3 Yogurt Bites (Banana, Strawberry, and Mixed Berry); and Stage 2 Jarred Foods (Sweet Potato, Apple Strawberry, Banana, Apple, & Pear, Mixed Veggies, Green Bean, Banana, and Mixed Berries, Carrots Corn and Pumpkin).

36.    Plaintiff Ashley Popa ("Plaintiff Popa") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the Commonwealth of Pennsylvania.  Between 2019 and 2020, Plaintiff Popa purchased several types of the Walmart Baby Food Products from Walmart online and at a Walmart store in New Castle, Pennsylvania to feed her child, including but not limited to:  Stage 1 Jarred Foods (Butternut Squash, Carrot, Pear, Apple, Sweet Potato, and Butternut Squash); Stage 2 Pouches (Berries & Beets, Organic Amaranth & Fruity Potato, Organic Pear, Mango & Spinach, Just Mango, Carrot, Organic Strawberry, Carrot & Quinoa, and Just Pears); Stage 2 Rice Rusks (Banana and Strawberry); Stage 3 Little Hearts Puffed Grain/Cereal Snack (Blueberry); Stage 2 Crunchers (White Cheddar); and Stage 3 Yogurt Bites.

37.    Plaintiff Ryan Sanders ("Plaintiff Sanders") is a natural person and is currently a citizen and resident of the State of Oklahoma and formerly was a citizen and resident of the State of Texas.  Between 2013 and 2017, Plaintiff Sanders purchased several types of the Walmart Baby Food Products from Walmart stores in Texas to feed his child, including but not limited to: Infant Formula (Sensitivity and Tender Non-GMO); Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Peas, Berries, Fruit and Veggie, Sweet Potato, Blueberry, Corn, Mango, Green Beans); Stage 2 Pouches (Just Pear, Banana Berry Burst, Berry and Oats, Pear Banana Berry and Greek Yogurt, Apple Strawberry and Oat, Sweet Potato, Banana Pear Mango and Orange,

Mango and Pumpkin); Stage 2 Jarred Foods (Chicken and Gravy, Turkey and Gravy, Beef and Gravy, Macaroni and Cheese, Beef and Beans, Chicken and Vegetables, Spaghetti, Banana Apple and Pear, Apple and Strawberry, Butternut Squash and Pineapple, Sweet Potato, Apple Strawberry and Banana, and Banana); Stage 3 Yogurt Bites (Peach, Banana, Strawberry, Mixed Berry, Cherry Vanilla, and Vanilla); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Banana, Peach, Blueberry, Strawberry, Strawberry Apple, Sweet Potato, Peach Mango, and Strawberry Yogurt); Toddler Finger Foods (Ravioli Pasta and Macaroni and Cheese); and Teething Ring Cookies.

38.     Plaintiff Vito Scarola ("Plaintiff Scarola") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Florida.  Between October 2016 and December 2018, Plaintiff purchased several types of the Walmart Baby Food Products from Walmart stores in Florida to feed his child including but not limited to:  Stage 1 Cereal (Rice and Sensitive Oatmeal); Stage 1 Tubs (Butternut Squash, Carrot, Pear, Apple, and Sweet Potato); Stage 2 Jarred Foods (Butternut Squash and Organic Whole Grain Macaroni & Cheese); Stage 2 Pouches (Just Mango, Carrot, Organic Strawberry Carrot & Quinoa, Just Pears, and Organic Rice & Beans Pouch); Stage 2 Tubs (Banana, Apple Strawberry, and Sweet Potato); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Blueberry and Strawberry Yogurt Cereal); Stage 3 Crunchers (White Cheddar); Pediatric Shakes (Vanilla, Chocolate, Strawberry, Vanilla with Fiber); and Stage 3 Yogurt Bites.

39.     Plaintiff Julie Secrist ("Plaintiff Secrist") is a natural person and is, and at all times relevant hereto, has been a citizen and resident of the State of Colorado.  Between 2015 and 2020, Plaintiff Secrist purchased several types of the Walmart Baby Food Products from Walmart stores in Colorado to feed his child, including but not limited to:  Stage 1 Rice Baby

Cereal and Oatmeal Baby Cereal; Stage 2 Jars (Banana, Blueberry, and Green Beans, Organic Whole Grain Macaroni & Cheese); Stage 2 Tubs (Banana, Apple Strawberry, Sweet Potato); Stage 2 Pouches (Just Pears, Just Mango, Organic Pear, Mango & Spinach); Stage 2 Rice Rusks (Banana, Strawberry); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Blueberry); Stage 3 Yogurt Bites; Toddler Organic Orchard Blend Fruit & Veggie Bites; Toddler Berry Bites; and Stage 3 Crunchers (White Cheddar).

40.     Plaintiff Tabatha Sidi ("Plaintiff Sidi") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Utah.  Between 2012 and 2016, Plaintiff Sidi purchased several types of the Walmart Baby Food Products from Walmart stores in Utah to feed her children, including but not limited to:  Infant Formula (Infant, Advantage, and Organic).

41.     Plaintiff Margo Tenzo ("Plaintiff Tenzo") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Louisiana.  Between 2010 and 2013, Plaintiff Tenzo purchased several types of the Walmart Baby Food Products from Walmart stores in Louisiana and the State of Florida to feed her children, including but not limited to:  Stage 1 Jarred Foods (Apples, Bananas, Carrots), Stage 2 Pouches (Apple, Banana), and Stage 2 Jarred Foods (Sweet Potato, Apple Strawberry, Banana, Sweet Peas).

42.     Plaintiff Megan Troyer ("Plaintiff Troyer") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Michigan.  Between 2014 to 2016 and 2020 to early 2021, Plaintiff Troyer purchased several types of the Walmart Baby Food Products from Walmart stores in Michigan and the State of Texas to feed her children, including but not limited to:  Stage 1 Rice Baby Cereal, Stage 1 Jars (Apple, Banana, Pears), Stage 1 Tubs (Carrot, Butternut Squash), Stage 2 Rice Rusks (Banana, Blueberry, Organic Apple, Organic

Strawberry), Stage 2 Tubs (Sweet Potato, Apple Strawberry, Banana, Butternut Squash &

Pineapple), Stage 2 Jars (Mango, Banana Apple & Pear, Mixed Vegetables, Green Bean, Apple

& Spinach, Banana & Mixed Berries, Carrots, Corn & Pumpkin); Stage 2 Pouches (Just Apple,

Just Banana, Organic Green Bean Medley, Organic Root Veggies & Apple, Organic Strawberry,

Carrot & Quinoa, Organic Sweet Potato, Apple & Grape, Organic Butternut Squash, Organic

Pear, Mango & Spinach, Sweet Potato & Cinnamon); Stage 3 Little Hearts Puffed Grain/Cereal

Snacks (Blueberry, Banana, Sweet Potato, Strawberry Apple, Strawberry Yogurt); Stage 3

Pouches (Eggs & Ham, Pea & White Chicken Puree, Chicken Noodle Puree, Sweet Potato &

Turkey Puree); Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Blueberry, Banana, Sweet

Potato, Apple, Peach Mango, Strawberry Yogurt); and Stage 3 Yogurt Bites (Banana,

Strawberry, and Mixed Berry).  On March 12, 2021, Plaintiff Troyer sent a letter to Walmart

complying with Tex. Bus. & Com. Code § 17.505.

43.      Plaintiff Brittany Wallace ("Plaintiff Wallace") is a natural person and is, and at

all times relevant hereto, has been a citizen and resident of the State of Illinois.  Between 2016

and early 2021, Plaintiff Wallace purchased several types of the Walmart Baby Food Products

from Walmart stores in Illinois to feed his child, including but not limited to:  Stage 1 Tubs

(Sweet Potato); Stage 2 Tubs (Carrot, Banana, Apple Strawberry, and Sweet Potato); Stage 2

Pouches (Organic Pear, Mango & Spinach, Organic Strawberry, Carrot & Quinoa Fruit &

Veggie Puree); Stage 2 Rice Rusks (Banana, Strawberry); Stage 3 Little Hearts Puffed

Grain/Cereal Snacks (Blueberry).

44.      Plaintiff Teressa Wilson ("Plaintiff Wilson") is a natural person and is, and at all

times relevant hereto has been, a citizen and resident of the State of Indiana.  Between 2011 and

2015, Plaintiff Wilson purchased several types of the Walmart Baby Food Products from

Walmart stores in Indiana to feed her children, including but not limited to:  Infant formula, Stage 1 Rice Baby Cereal, Stage 1 Jarred Foods (Apples, Bananas, Pears, Carrots, Peas, Berries, Sweet Potato Mango), Stage 2 Jarred foods (Turkey and Gravy, Macaroni and Cheese, Chicken and Vegetables, Spaghetti, Ravioli), Stage 2 Pouches (Berries & Beets Fruit & Vegetable Puree); Stage 3 Yogurt Bites (Peach and Vanilla); Toddler Finger Food (Beef and Tomato Pasta); and Arrowroot Cookies.

45.     Plaintiff Amber Wright ("Plaintiff Wright") is a natural person and is, and at all times relevant hereto has been, a citizen and resident of the State of Kentucky.  Between 2020 and early 2021, Plaintiff Wright purchased several types of the Walmart Baby Food Products from Walmart stores in Kentucky to feed her child, including but not limited to:  Stage 2 Rice Rusks (Banana, Strawberry, Blueberry, Apple), Stage 1 Jarred Foods (Pear, Apple, Banana, Butternut Squash, Carrot), Stage 2 Jarred Foods (Sweet Potato, Apple Strawberry, Banana, Banana Apple Pear, Mixed Vegetables, Green Bean), Stage 3 Little Hearts Puffed Grain/Cereal Snacks (Banana, Strawberry Apple, Strawberry Yogurt), and Yogurt Bites (Banana, Strawberry).

46.     Each Plaintiff believed they were feeding their respective child(ren) healthy, nutritious baby food.  Each Plaintiff saw and relied upon the packaging of the Walmart Baby Food Product(s) purchased.  Each Plaintiff made those purchases without knowledge that the Walmart Baby Food Products contained (or had a material risk of containing) toxic heavy metals.  If each Plaintiff had known that the Walmart Baby Food Products purchased contained (or had a material risk of containing) toxic heavy metals, each Plaintiff would not have purchased or would not have paid as much for the Walmart Baby Food Products.

47.     Plaintiffs Baker, Bruno, Butkus, Canada, Coleman, David, Dykes, Gutierrez, Hobdy, Lockhart, Lowrey, Neal, Popa, Sanders, and Wallace would be willing to purchase

Parent's Choice products in the future if they could be certain that they do not contain (or have a material risk of containing) heavy metals.

48.     Defendant Walmart is a citizen of Delaware, where it is incorporated, and Arkansas, where it maintains its principal place of business at 702 S.W. 8th St., Bentonville, AR 72716. Walmart does business throughout the United States, and markets, advertises, labels, represents, warrants, distributes, and sells baby food products online and at brick-and-mortar retail stores under its private label brand, "Parent's Choice."  Arkansas is the nerve center of Walmart's business operations related to the conduct alleged herein.

49.     The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such Doe defendants under fictitious names. Upon information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

## SUBSTANTIVE ALLEGATIONS

**A.     Walmart Falsely Touts the Quality and Safety of Its Baby Food Products and Fails to Disclose That Its Baby Food Products Contain Heavy Metals**

50.     Few things are as precious as babies to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[12]

---

[12]     OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015), available at:

51.     Consumers expect that sellers of their own private label baby food will regard their children's health and safety as paramount when formulating their products, sourcing their ingredients, and testing for safety, and that sellers will be transparent in their labeling and marketing about what goes into their baby food products.[13]

52.     Walmart knows this. For example, Walmart's website claims that, "Walmart's special range of products for baby has been the choice of parents in American homes for years. What started as a line of baby formula is now a complete baby collection specially selected with love and attention to this special time in your family's life. With a trust and safety guarantee to make shopping for baby easy, Parent's Choice takes care of everything little ones need[.]"[14]

53.     Walmart's website promotes the trustworthiness and quality of its Parent's Choice brand as follows:

> Walmart's special range of products for baby has been the choice of parents in American homes for years. What started as a line of baby formula is now a complete baby collection specially selected with love and attention to this special time in your family's life. ***With a trust and safety guarantee to make shopping for baby easy, Parent's Choice takes care of everything little ones need at an every day low price.*** As a new parent, you've got enough on your mind; you shouldn't have to sweat the price of high-quality baby essentials like . . . baby food.[15]

54.     Indeed, the Walmart Baby Food Products' brand name itself, Parent's *Choice*, conveys to reasonable consumers that Walmart Baby Food Products are healthy, nutritious, and safe for consumption by infants and young children—because that is what parents would ***choose*** to feed their child.

---

https://www.nielsen.com/wpcontent/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf.
[13]     *Id.*
[14]     https://www.walmart.com/cp/parents-choice-baby-products/4549164.  (last  accessed  November 12, 2021).
[15]     https://www.walmart.com/cp/parents-choice-baby-products/4549164 (emphasis added).

55.    Walmart's labeling, marketing, and advertising strategy is consistently focused on promoting Walmart's Baby Food Products as healthy, nutritious, organic, naturally flavored, non-GMO and safe for consumption by infants and young children in order to induce consumers to purchase the products.

56.    Walmart's labeling, marketing, and advertising of the Walmart Baby Food Products prominently uses and displays words such as "organic", "naturally flavored", "great for you," and "Non GMO," utilizes the U.S.D.A. organic logo, and indicates the target age for which the food is appropriate to emphasize the foods' suitability for consumption by young children and infants.  Examples of such packaging and representations are provided below:









57.     Notably, *none* of Walmart's labeling, marketing, or advertising materials warned

that Walmart Baby Food Products contained (or had a material risk of containing) elevated levels

of toxic heavy metals that could harm the health and physiological and neurocognitive development, including brain development, of children consuming such baby food products (hereinafter collectively referred to as "Omissions").

58.     In fact, based on the impression given by the packaging, no reasonable consumer could expect or understand that Walmart Baby Food Products contain (or have a material risk of containing) toxic heavy metals.

59.      As alleged herein, Walmart Baby Food Products have been shown (and Plaintiffs' testing confirms) that these foods contain detectable levels of toxic heavy metals known to pose health risks to humans, and particularly to infants and children.

60.     The Walmart Baby Food Products' packaging does not include any type of disclaimer or disclosure regarding the presence of heavy metals that would inform consumers of their presence. Likewise, there is nothing on the packaging stating that heavy metals can be unsafe or accumulate over time resulting in developmental issues, poisoning, injury, and/or disease.

61.     Instead, Walmart chose to focus on promoting Walmart Baby Food Products as healthy, nutritious, safe, high quality, organic, and made with superior ingredients to induce consumers to purchase the products.

62.     It was recently revealed that Walmart was knowingly, recklessly, and/or negligently selling baby food that contained heavy metals and other toxins.

**B.     Walmart Sells Baby Food Products Tainted by Toxic Heavy Metals**

63.     In November 2019, having been made aware of reports of high levels of toxic heavy metals in baby foods, the Subcommittee sought internal testing records and other documents from several baby food manufacturers and sellers, including Walmart.

64.     Based on this investigation, the Subcommittee Report concluded that "commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium."[16]  The Subcommittee Report further found that baby food manufacturers and sellers "*knowingly* sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever" (emphasis added).[17]

65.     The Subcommittee Report added that "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers like Walmart" are compounding the problem by "adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[18]

66.     Although Walmart initially failed to cooperate with its investigation and refused to produce any documents showing its internal testing policies or results, the Subcommittee Report stated that "…independent testing has revealed the presence of toxic heavy metals in [Walmart's] baby food."[19]

67.     The Subcommittee Report specifically cited to the HBBF Report, discussed further below, which detailed the findings of testing conducted by an independent organization focused on the health and safety of babies and children. The HBBF Report described the results of its testing of certain Walmart Baby Food Products and found the presence of arsenic, lead, cadmium, and mercury, which was dangerous, unsafe, and unfit for consumption by babies and children.

---

[16]     Subcommittee Report at 59.
[17]     *Id.*
[18]     *Id.* at 56.
[19]     *Id.* at 43.

68.     In October 2019, the HBBF Report concluded, after testing 168 different baby foods sold in the U.S., that "[n]inety-five percent of baby foods tested were contaminated with one or more of four toxic heavy metals—arsenic, lead, cadmium and mercury. All but nine of 168 baby foods contained at least one metal; most contained more than one."[20]

69.     The HBBF Report further identified various cereals and snacks products with "rice" "apple, pear, grape and other fruit juices", and "carrots and sweet potatoes" manufactured and sold by baby food companies as particularly high in dangerous heavy metals.[21]

70.     In particular, the following chart from the HBBF Report shows that Walmart's Baby Food Products contain dangerous levels of toxic heavy metals:

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Metro area where purchased | Retailer |
|---|---|---|---|---|---|---|---|---|---|
| Parent's Choice (Walmart) | Little Hearts Strawberry Yogurt Cereal Snack - Stage 3, 9+ months | Snack - other | 56.1 | -- | 5.2 | 26.1 | 0.941 | Charlottesville, VA | Walmart |
| Parent's Choice (Walmart) | Organic Strawberry Rice Rusks - Stage 2, 6+ months | Snack - teething biscuits & rice rusks/cakes | 108 | 66 | 26.9 | 2.4 | 2.05 | Charlottesville, VA | Walmart |

71.     Notably, the Little Hearts snack, a food product that Walmart markets as safe for infants as young as nine months old, was found to contain 56.1 ppb total arsenic, 5.2 ppb lead, and 26.1 ppb cadmium.  Similarly, HBBF's testing of the Parent's Choice's Organic Strawberry Rice Rusks, a food created for infants as young as six months, revealed that this product contained 108 ppb of total arsenic and 66 ppb of inorganic arsenic, nearly 27 ppb lead, and 2.05 ppb mercury.

---

[20]     HBBF Report at 6.
[21]     *Id.* at 10-11.

72.     After the Subcommittee Report was issued, Walmart provided information on its internal heavy metal standards to the Subcommittee. In the Subcommittee Report No. 2, the Subcommittee found the results of its investigation into Walmart's practices to be "troubling."[22]

73.     The Subcommittee Report No. 2 states:

Walmart does not appear to conduct any testing of its baby food products for toxic heavy metals. Instead, it sets maximum toxic heavy metal levels and asks the manufacturer of Walmart's private label to self-certify that products meet those levels. It does not appear that Walmart collects any test data on the toxic heavy metal levels of its baby foods to check the accuracy of the certifications.[23]

74.      Prior to December 20, 2018, Walmart allowed no more than 23 ppb arsenic in its rice cereal, oatmeal cereal, and puffed grains.[24]   This is still more than double the 10 ppb arsenic the FDA allows in bottled water.[25]

75.     After this date, Walmart "began subjecting babies to more dangerous levels of toxic heavy metals . . . , allowing more than quadruple the previous amount of arsenic in rice cereal, oatmeal cereal, and puffed grains—moving from 23 ppb to 100 ppb."  The Subcommittee called this "a drastic retreat in safety standards."[26]

76.     Furthermore, "Walmart does not have any standards for cadmium or mercury and does not require any cadmium or mercury testing."[27]

---

[22]     Subcommittee Report No. 2 at 21.

[23]     *Id.*

[24]     *Id*. at 22.

[25]     Food and Drug Administration, Arsenic in Food and Dietary Supplements (online at www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements) (accessed November 12, 2021).

[26]     Subcommittee Report No. 2 at 22.

[27]     *Id.*

C.      **Independent Testing and the Recent Recall of Parent's Choice Rice Baby Cereal Supports That Walmart Baby Food Products Contain Toxic Heavy Metals**

*Consumer Reports*

77.     In addition to the Subcommittee's reports and the HBBF Report, a 2018 study of numerous nationally distributed packaged baby foods by Consumer Reports ("CR"),[28] including the "Little Puffs Cereal Snack, Strawberry Apple" from Walmart's "Parent's Choice" brand, found that every product tested had measurable levels of at least one of the following heavy metals: cadmium, inorganic arsenic, or lead.

78.     Furthermore, CR noted that approximately 68% had "worrisome" and "concerning" levels of at least one heavy metal.  Fifteen of the foods tested would pose potential health risks to children who regularly eat just one serving or less per day.  Two rice cereals contained measurable levels of methylmercury.

79.     Products containing rice or a rice derivative, including Walmart's Little Puffs cereal snacks, fared worst in the CR study due to the presence of large amounts of inorganic arsenic, lead, and cadmium.  As a category, snack foods – bars, cookies, crackers, crunches, crisps, rice rusks, teething biscuits, and puffs – were most problematic, generally because of their rice content.  This finding is especially concerning given that approximately seventy-two percent (72%) of parents said they feed their child at least one of the types of snack foods CR tested.

*Plaintiffs' Counsel's Independent Testing*

80.     Recent testing conducted by Plaintiffs' counsel on nine samples of Walmart Baby Food Products confirms alarming levels of heavy metals. These results show that heavy metals

---

[28]     Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know,* CONSUMER REPORTS.ORG (March 9, 2018) available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/

are significantly present in the foods and Walmart's purported attempt to minimize the

significance of heavy metals in these products is failing:

| Food | Arsenic (ppb) | Cadmium (ppb) | Mercury (ppb) | Lead (ppb) |
|---|---|---|---|---|
| Parent's Choice Organic Strawberry Rice Rusks | 125 | <LoQ | <LoQ | 20 |
| Parent's Choice Organic Strawberry Rice Rusks | 139 | <LoQ | <LoQ | <LoQ |
| Parent's Choice Organic Strawberry Rice Rusks | 164 | <LoQ | <LoQ | 17 |
| Parent's Choice Little Hearts Blueberry | 116 | 36 | <LoQ | <LoQ |
| Parent's Choice Little Hearts Blueberry | 128 | 39 | <LoQ | <LoQ |
| Parent's Choice Little Hearts Banana | 127 | 37 | <LoQ | <LoQ |
| Parent's Choice Rice Baby Cereal | 212 | <LoQ | <LoQ | <LoQ |
| Parent's Choice Rice Baby Cereal | 187 | 14 | <LoQ | <LoQ |
| Parent's Choice Rice Baby Cereal | 175 | 18 | <LoQ | <LoQ |

81.     As discussed further below, these results show that the products contained levels

of arsenic, cadmium, and lead that are well in excess of FDA limits set for these elements in

bottled water. In sum, the limited independent testing conducted to date demonstrates that a

significant number of Walmart Baby Food Products contain toxic heavy metals in dangerously

high amounts.

82.     Indeed, on October 8, 2021, the manufacturer of Parent's Choice issued a

voluntary recall of three lots of its Parent's Choice Rice Baby Cereal that it manufactures for

Walmart. This recall was the "result of a routine sampling program by the FDA which found that

a sample from three production lots of Parent's Choice Rice Baby Cereal tested above the guidance for naturally occurring inorganic arsenic."[29]

83.     Based on the Subcommittee's extensive investigation, independent testing, Plaintiffs' own testing, and the recent recall of Parent's Choice Rice Baby Cereal, there is a great likelihood that additional comprehensive testing will show that other Walmart Baby Food Products also contain elevated levels of toxic heavy metals.

**D.      Whether Baby Foods Contain Toxic Heavy Metals Is Material to Reasonable Consumers Due to the Negative Effects These Neurotoxins Have on Child Development**

84.      Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

85.      In particular, parents want to avoid exposing their children to the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[30] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[31]

86.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]" Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and

---

[29]      https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/maple-island-inc-issues-voluntary-recall-three-lots-parents-choice-rice-baby-cereal.

[30]      *Neurotoxin*, https://www.britannica.com/science/neurotoxin (accessed November 12, 2021).

[31]      HBBF Report at 13.

cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[32] These developmental conditions can be caused by exposure to even trace amounts of these substances.[33]

87.     For these reasons, organizations such as the FDA and the WHO have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[34] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[35]

88.     *Arsenic*.  Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and FDA to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("ppb") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 ppb for bottled water[36] and is considering limiting the action level for arsenic in rice cereals for infants.[37]

89.     However, the Parent's Choice Organic Strawberry Rice Rusks (Stage 2–6+ months) contains 108 ppb of total arsenic, more than ten times the FDA and EPA limit for

---

[32]     *Id*. at 6.
[33]     *Id.* at 1.
[34]     Subcommittee Report at 2.
[35]      *Id*. at 3.
[36]     Laura Reiley, New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to *Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed November 12, 2021).
[37]     FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action *Level* (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM493152.pdf (accessed November 12, 2021).

bottled water, and Parent's Choice Little Hearts Strawberry Yogurt Cereal Snack (Stage 2-9+

months) contains 56.1 ppb total arsenic, more than five times the EPA and FDA limit for bottled

water.  Of the samples Plaintiffs had tested, Parent's Choice Organic Strawberry Rice Rusks

contained between 12 and 16 times the EPA and FDA limit for arsenic in bottled water; Parent's

Choice Little Hearts contained between 11 and 13 times the EPA and FDA limit for arsenic in

bottled water; and Parent's Choice Rice Baby Cereal—the product eventually recalled—

contained between 17 and 20 tines the EPA and FDA limit for arsenic in bottled water.

90.     Furthermore, the Subcommittee Report No. 2 revealed that Walmart's internal

testing standard for inorganic arsenic used to be 23 ppb in its rice cereal, oatmeal cereal, and

puffed grains. However, Walmart "more than quadrupled" its allowable limit of inorganic

arsenic in its baby foods from 23 ppb to 100 ppb in 2018, without justification for "its extreme

course reversal on protecting babies' neurological development."[38]

91.     **Lead**.  The proven negative effects of lead exposure have caused several health

organizations—including the American Academy for Pediatrics, the Environmental Defense

Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb,[39] and

"[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[40]  The FDA

has set the maximum allowable level of lead in bottled water at 5 ppb.[41]  Of the three samples of

Parent's Choice Organic Strawberry Rice Rusks Plaintiffs tested, two contained elevated levels

of lead between 3 and 4 times the FDA limit for lead in bottled water.  HBBF's testing also

---

[38]     Subcommittee Report No. 2 at 4.

[39]     Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed November 12, 2021).

[40]     *Id*.

[41]     Subcommittee Report at 4.

revealed Parent's Choice Organic Strawberry Rice Rusks and Parent's Choice Little Hearts Strawberry Yogurt Cereal Snack contained elevated levels of lead above the FDA limit for lead in bottled water.

92.    ***Mercury***.  The EPA has set a maximum mercury level in drinking water to 2 ppb.[42]  Notably, Walmart does not have an internal standard for mercury, and does not require any testing of Walmart Baby Food Products for mercury.[43]

93.    ***Cadmium***.  The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[44]  Notably, Walmart does not have an internal standard for cadmium, and does not require any testing of Walmart Baby Food Products for cadmium.[45]

94.    Of the samples Plaintiffs tested, the Parent's Choice Little Hearts samples contained more than seven times the FDA limit for cadmium in bottled water; and two of the three Parent's Choice Rice Baby Cereal samples—the product eventually recalled—contained nearly two times the FDA limit for cadmium in bottled water.  The HBBF's testing revealed that Parent's Choice Little Hearts Strawberry Yogurt Cereal Snack contained more than five times the FDA limit for cadmium in bottled water.

---

[42]    Subcommittee Report at 12-13.

[43]    Subcommittee Report No. 2 at 23; *see also* Walmart, Food Safety Guidelines, Infant/Adult Nutrition—Infant Dry Foods (Dec. 20, 2018) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/WM-ECP-0000009_Redacted.pdf).

[44]    Subcommittee Report at 29.

[45]    Subcommittee Report No. 2 at 23; *see also* Walmart, Food Safety Guidelines, Infant/Adult Nutrition—Infant Dry Foods (Dec. 20, 2018) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/WM-ECP-0000009_Redacted.pdf).

95.     As James E. Rogers, Ph.D., the director of food safety research and testing at CR, stated, "[b]abies and toddlers are particularly vulnerable due to their smaller size and developing brains and organ systems."  "They also absorb more of the heavy metals that get into their bodies than adults do."[46]

96.     The risk from heavy metals grows over time as they accumulate in the kidneys and other internal organs. Tunde Akinleye, a chemist in CR's Food Safety Division who led the testing, stated that, "[t]hese toxins can remain in your body for years."[47]  Regular consumption of even small amounts of toxic heavy metals over a long period of time may raise the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes; among other conditions.

97.     Yet, in testing conducted by Consumer Reports, approximately one-third of tested products had levels of heavy metals that were below levels of concern and other products had immeasurable levels of heavy metals.[48]  As stated by Dr. James E. Rogers, the Consumer Reports Director of Food Safety Research and Testing, "Every category of food was represented in that lower-risk group. That indicates that there are ways for manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[49]

**E.     Walmart Had a Duty to Disclose the Presence of Heavy Metal Contamination in Walmart Baby Food Products**

98.     Walmart packaged, labeled, advertised, and marketed its products, among other things, as naturally flavored, organic, non-GMO, "great for you", and safe for consumption.  By

---

[46]     https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.
[47]      https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ at fn 8.
[48]     https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed November 12, 2021).
[49]     https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed November 12, 2021).

doing so, Walmart had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained toxic heavy metals.

99.     Walmart's false, misleading, and deceptive packaging, labeling, advertising, and marketing of its Products wrongfully conveys to consumers that Walmart Baby Food Products have certain superior quality and characteristics that they do not actually possess. For example, Walmart's misrepresentations caused Plaintiffs and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

100.     Through its false, misleading, and deceptive packaging, labeling, advertising, and marketing, Walmart seeks to induce—and does induce—consumers to purchase Walmart Baby Foods when they would otherwise have purchased other baby foods that do not contain toxic heavy metals.

101.     Walmart knew that its customers trust the quality of its products and that customers expect Walmart's products to be free of toxic heavy metals and other undesirable toxins and contaminants.  For example, the company's website offers the following general reassurance about the Parent's Choice brand: "With a trust and safety guarantee to make shopping for baby easy, Parent's Choice takes care of everything little ones need…."[50]  As for the specific products, in the "About This Item" for the "Little Puffs" product, Walmart states that "Since 1998, Walmart's Parent's Choice has been trusted by parents across the country to

---

[50]       https://www.walmart.com/cp/parents-choice-baby-products/4549164.

provide quality, affordable baby products."[51] This statement is also found on the "About This Item" section for Walmart's Organic Rice Husks product.[52]  These are the same products that the HBBF Report previous tested and found contained dangerous amounts of heavy metals.

102.    Walmart's knowledge that its customers trust the quality of its products, their expectations that Walmart Baby Foods will be free of toxic heavy metals, and consumers' willingness to pay more for baby foods that are free from toxins and contaminants, is evident in Walmart's marketing campaigns that are intended to convey to consumers that Walmart Baby Foods possess certain qualities and characteristics that justify the price.

103.    Walmart knew or should have known that the Walmart Baby Food Products contained toxic heavy metals that pose health risks to humans, and particularly to infants and young children. Walmart knew consumers purchased the Walmart Baby Food Products based on the reasonable expectation that Walmart sold and had manufactured the Walmart Baby Food Products in a way that was prescribed by its marketing and advertising.

104.    Walmart intended that Plaintiffs and Class members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Walmart Baby Food Products' packaging by Walmart, as well as its advertising, marketing, and labeling of the Walmart Baby Food Products as organic, non-GMO, and safe for consumption by infants and young children.[53]

---

[51]    https://www.walmart.com/grocery/ip/Parent-s-Choice-Little-Hearts-Puffed-Grain-Snack-Strawberry-Apple-1-48-oz/38763848.

[52]    https://www.walmart.com/grocery/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Strawberry-Baby-Snack-1-76-oz-Box/171533478.

[53]    *See, e.g.*, https://www.walmart.com/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Banana-Baby-Snack-1-76-oz-Box/46831884;   https://www.walmart.com/ip/Parent-s-Choice-Stage-3-White-Cheddar-Baby-Snack-1-48-oz-Canister/23623499;  https://www.walmart.com/ip/Parent-s-Choice-Toddler-Food-Berry-Baby-Snack-1-oz-Bag/705920946.

105.     Walmart recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed its Baby Food Products, disregarded the unreasonable risks created by the presence of heavy metals in its baby food, and failed to adequately inform or warn Plaintiffs and those similarly situated.

106.     However, Walmart's labeling, marketing, and advertising is deceptive, misleading, unfair and false to Plaintiffs and other consumers of Walmart Baby Food Products. Walmart failed to disclose that the products contain or may contain any level of heavy metals. Walmart intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiffs and members of the Classes to purchase Walmart Baby Food Products.  This is true especially considering the long-standing campaign by Walmart to label, market, and advertise the Walmart Baby Food Products as, among other things, naturally flavored, organic, non-GMO, and safe for consumption, and to induce consumers, such as Plaintiffs, to purchase the products.

107.     As a result of Walmart's false, misleading, and deceptive statements and omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Walmart Baby Food Products without conducting his or her own tests or relying on tests conducted by a third party.

108.     As a result of Walmart's false, misleading, and deceptive statements and omissions, Plaintiffs and members of the Classes bought Walmart Baby Foods they would not have otherwise bought and/or paid more for Walmart Baby Food Products than they would have paid had it been fully disclosed that Walmart Baby Food Products contain or may contain toxic heavy metals.

**TOLLING AND ESTOPPEL**

A.      **Discovery Rule Tolling**

109.    Plaintiffs and the Classes had no way of knowing about Walmart's conduct with respect to the presence of toxic heavy metals.

110.    Neither Plaintiffs nor any other members of the Classes, through the exercise of reasonable diligence, could have discovered the conduct alleged herein.

111.    Plaintiffs and members of the Classes did not discover and did not know of facts that would have caused a reasonable person to suspect that Walmart was engaged in the conduct alleged herein.

112.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the Classes.

B.      **Fraudulent Concealment Tolling**

113.    By failing to provide notice of the presence of toxic heavy metals in the Walmart Baby Food Products, Walmart concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Classes.

114.    Upon information and belief, Walmart intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes. Plaintiffs and the members of the Classes were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Walmart's conduct.  For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes should be tolled.

**CLASS ACTION ALLEGATIONS**

115.    Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons who purchased Walmart Baby Food Products for household use and not for resale within the applicable statute of limitations (the "National Class").

116.    In addition, Plaintiffs bring this action individually and on behalf of the following statewide subclasses based on their state of residence at the time of purchase of Walmart Baby Food Products and/or at the time this pleading was filed, pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure.

117.    Plaintiffs Ainsworth, Coleman, and Neal bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Arkansas and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Arkansas Subclass").

118.    Plaintiffs Martin and Hobdy bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Alabama and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Alabama Subclass").

119.    Plaintiff Lockhart brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of California and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "California Subclass").

120.    Plaintiff Secrist brings this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Colorado and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Colorado Subclass").

121.    Plaintiffs David, Scarola, and Tenzo bring this action individually and on behalf of the following subclass:

> All persons who are or were citizens of Florida and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Florida Subclass").

122.    Plaintiff Dykes brings this action individually and on behalf of the following

subclass:

> All persons who are or were citizens of Georgia and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Georgia Subclass").

123.    Plaintiffs Bruno and Wallace bring this action individually and on behalf of the

following subclass:

> All persons who are or were citizens of Illinois and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Illinois Subclass").

124.    Plaintiffs Bruno and Wilson bring this action individually and on behalf of the

following subclass:

> All persons who are or were citizens of Indiana and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Indiana Subclass").

125.    Plaintiff Lockhart brings this action individually and on behalf of the following

subclass:

> All persons who are or were citizens of Kansas and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Kansas Subclass").

126.    Plaintiffs Baker, Butkus, and Wright bring this action individually and on behalf

of the following subclass:

> All persons who are or were citizens of Kentucky and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Kentucky Subclass").

127.    Plaintiff Tenzo brings this action individually and on behalf of the following

subclass:

All persons who are or were citizens of Louisiana and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Louisiana Subclass").

128.     Plaintiff Gutierrez brings this action individually and on behalf of the following

subclass:

All persons who are or were citizens of Massachusetts and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Massachusetts Subclass").

129.     Plaintiff Troyer brings this action individually and on behalf of the following

subclass:

All persons who are or were citizens of Michigan and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Michigan Subclass").

130.     Plaintiff Cathey brings this action individually and on behalf of the following

subclass:

All persons who are or were citizens of Missouri and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Missouri Subclass").

131.     Plaintiff Manley brings this action individually and on behalf of the following

subclass:

All persons who are or were citizens of Nebraska and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Nebraska Subclass").

132.     Plaintiff Lockhart brings this action individually and on behalf of the following

subclass:

All persons who are or were citizens of New Mexico and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "New Mexico Subclass").

133.     Plaintiffs Martell and Partello bring this action individually and on behalf of the

following subclass:

42

All persons who are or were citizens of New York and purchased Walmart Baby Foods in the state for household or use and not for resale within the applicable statute of limitations (the "New York Subclass").

134.    Plaintiff Canada brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of North Carolina and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "North Carolina Subclass").

135.    Plaintiff Sanders brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Oklahoma and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Oklahoma Subclass").

136.    Plaintiffs Popa and Grossi bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Pennsylvania and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Pennsylvania Subclass").

137.    Plaintiffs Lowrey,  Sanders, and Troyer bring this action individually and on behalf of the following subclass:

All persons who are or were citizens of Texas and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Texas Subclass").

138.    Plaintiff Sidi brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Utah and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Utah Subclass").

139.    Plaintiff Baker brings this action individually and on behalf of the following subclass:

All persons who are or were citizens of Vermont and purchased Walmart Baby Foods in the state for household use and not for resale within the applicable statute of limitations (the "Vermont Subclass").

140.    The foregoing subclasses are referred to herein as the "Statewide Subclasses."  The National Class with the Statewide Subclasses are referred to herein as the "Classes."

141.    Excluded from the Classes are Walmart; any parent, subsidiary, or affiliate of Walmart; any entity in which Walmart has or had a controlling interest, or which Walmart otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Walmart; and any judges presiding over this case.

142.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether certification is appropriate.

143.    **Numerosity**: The proposed Classes are so numerous that joinder of all members would be impractical. The Walmart Baby Food Products are sold throughout the United States, directly and by third-party retailers.  The number of individuals who purchased Walmart Baby Food Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

144.    **Common Questions Predominate**: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual members of the Classes. These questions include, but are not limited to, the following:

> A.    Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Walmart Baby Food Products;

B.      Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

C.      Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

D.      Whether Defendant's representations concerning the Walmart Baby Food Products were likely to deceive a reasonable consumer;

E.      Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

F.      Whether Defendant represents to consumers that the Walmart Baby Food Products have characteristics, benefits, or qualities that they do not have;

G.      Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

H.      Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

I.      Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

145.    Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging, labeling, marketing, and advertising of the Walmart Baby Food Products. Each instance of harm suffered by Plaintiffs and members of the Classes has directly resulted from a single course of illegal

conduct. Each Class Member has been exposed to the same deceptive practice, as each of the Walmart Baby Food Products: (a) bear the materially same representations regarding the health and quality of the Walmart Baby Food Products, in that they are naturally flavored, organic, non-GMO, "great for you", and safe for consumption by infants and young children, and (b) the Walmart Baby Food Products actually contain (or have a material risk of containing) toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

146.   **Typicality**: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

147.   **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with, and are in no way antagonistic to, the interests of the members of the putative Classes they seek to represent. Plaintiffs have also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

148.   **Superiority**: The nature of this action and the nature of the laws available to Plaintiffs and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual members of the Classes is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Absent

46

the class action, Class Members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class Members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes. Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

149.     Class members are ascertainable through self-identification, the use of purchase records, reward and/or membership programs, and the possession of Walmart Baby Foods themselves.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Breach of Express Warranty
### (on behalf of the National Class, or in the Alternative, the Statewide Sublasses)

150.     Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

151.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for breach of express warranty.

152.     At all times relevant hereto, Walmart was engaged in the sale of the Walmart Baby Food Products, as described herein, throughout the United States, including Arkansas, for

use by members of the general public, including Plaintiffs and members of the Classes with the intent that the Walmart Baby Food Products be used as food for infants and young children.

153.    Walmart made express representations to Plaintiffs and members of the Classes, including but not limited to the following express representations: that the Walmart Baby Food Products were and are, among other things, naturally flavored, organic, non-GMO, "great for you", and safe for consumption by infants and young children.

154.    Walmart made these express representations regarding the Walmart Baby Food Products' quality, ingredients, and suitability for consumption in writing on the Walmart Baby Food Products' packaging and labels.

155.    These affirmations of fact and/or promises became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Walmart Baby Food Products and thus constituted express warranties.

156.    Plaintiffs and members of the Classes reasonably relied on Walmart's express warranties regarding the Walmart Baby Food Products in deciding whether or not to purchase the Walmart Baby Food Products.

157.    The Walmart Baby Food Products do not conform to Walmart's affirmations of fact and promises in that they contain various toxic heavy metals and are not safe or appropriate for consumption by infants and young children.

158.    Walmart knowingly breached the express warranties by including certain toxic heavy metals in Walmart Baby Food Products.  Specifically, Walmart was on notice of this breach, as Walmart was aware of the included heavy metals in the Walmart Baby Food Products based on the investigation in the HBBF Report that revealed certain of the Walmart Baby Food

Products as containing various toxic heavy metals.  Walmart also routinely measures the amount of heavy metals in the ingredients of its Walmart Baby Food Products.

159.    As a direct and proximate result of Walmart's breaches of its express warranties, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Walmart Baby Food Products that were worth less than the price they paid and they would not have purchased had they known of the presence of heavy metals that do not conform Walmart's express warranties.

160.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

161.    Plaintiffs provided Walmart with pre-suit notice of its breaches of warranty by sending a certified letter to Walmart containing the basis of their claims.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(on behalf of the National Class, or in the Alternative, the Statewide Subclasses)**

163.    Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

164.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for breach of implied warranty of merchantability.

165.    At all times relevant hereto, Walmart was engaged in the sale of the Walmart Baby Food Products, as described herein, throughout the United States, including Arkansas, for use by members of the general public, including Plaintiffs and members of the Classes, with the intent that the Walmart Baby Food Products be used as food for infants and young children.

166.    At all times relevant hereto, prior to the time the Walmart Baby Food Products were purchased by Plaintiffs and members of the Classes, Walmart impliedly warranted that the Walmart Baby Food Products were of merchantable quality and fit for their ordinary use (i.e., consumption by infants and children).

167.    These promises became part of the basis of the bargain between Walmart and Plaintiffs and members of the Classes, and thus constituted implied warranties.

168.    Plaintiffs and members of the Classes reasonably relied on these implied warranties when they purchased the Walmart Baby Food Products.

169.    The Walmart Baby Food Products were not fit for their ordinary use, consumption by infants or young children, as they include undisclosed levels of toxic heavy metals that do not conform to the packaging.

170.    Walmart breached its implied warranties by selling Walmart Baby Food Products that contain (or have a material risk of containing) toxic heavy metals.  Moreover, Walmart was on notice of this breach, as Walmart was aware of the included heavy metals in the Walmart Baby Food Products based on the investigation in the HBBF Report that revealed the Walmart Baby Food Products as containing various levels of toxic heavy metals.

171.    As a direct and proximate result of Walmart's breach of their implied warranties, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Walmart Baby Food Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals.

172.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

173.    Plaintiffs provided Walmart with pre-suit notice of its breaches of warranty by sending a certified letter to Walmart containing the basis of their claims.

### THIRD CAUSE OF ACTION
### Fraud by Omission
### (on behalf of the National Class, or in the Alternative, the Statewide Subclasses)

174.    Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

175.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for fraud by omission.

176.    Walmart actively and knowingly concealed from and failed to disclose to Plaintiffs and members of the Classes that the Walmart Baby Food Products contained, or were at risk of containing, heavy metals that do not conform to the Walmart Baby Food Products' labels and packaging.

177.    As a seller of its own private-label baby food, Walmart is in a special position of trust upon which consumers rely.

178.    Walmart was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients, and suitability of the Walmart Baby Food Products because: (1) Walmart was in a superior position to know the true state of facts about its products; (2) Walmart was in a superior position to know the actual ingredients, characteristics, and suitability of the Walmart Baby Food Products for consumption by infants and young children; and (3) Walmart knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Walmart Baby Food Products were misrepresented in the packaging and labels prior to purchasing the Walmart Baby Food Products; (4) Walmart's packaging and labels disclosed misleading information to consumers by omitting that Walmart

Baby Food Products contain (or have a material risk of containing) toxic heavy metals; and (5) based on Walmart's partial statements on Walmart Baby Food Products' labels and packaging that gave a misleading impression to reasonable consumers without further information on the presence of heavy metals that had not been disclosed, Walmart assumed the obligation to make a full and fair disclosure of the whole truth.

179.    Walmart knows its customers trust the quality of its products and that they expect Walmart Baby Food Products to be free of heavy metals. Walmart also knows that certain consumers seek out and wish to purchase baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay more for baby foods that they believe possess these qualities.

180.    Due to the Omissions on Walmart Baby Food Products packaging, Walmart had a duty to disclose the whole truth about the presence of heavy metals in Walmart Baby Food Products to Plaintiffs and the Classes.  Walmart failed to discharge its duty to disclose the presence of heavy metals in Walmart Baby Food Products.

181.    The facts concealed or not disclosed by Walmart to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered the presence of heavy metals important when deciding whether to purchase the Walmart Baby Food Products.

182.    Walmart knew or should have known the Omissions were material to Plaintiffs' and the Classes' decisions to purchase Walmart Baby Food Products and would induce Plaintiffs and the Classes to purchase Walmart Baby Food Products.

183.    Plaintiffs and members of the Classes justifiably relied on Walmart's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Walmart Baby Food Products, which is inferior when compared to how the Walmart Baby

Food Products are represented by Walmart.  Customers like Plaintiffs and members of the Classes trust the quality of Walmart's products and they expect the Walmart Baby Food Products to be free of toxic heavy metals and seek out and wish to purchase baby foods that possess high quality ingredients free of toxic heavy metals that do not conform to the products' packaging.

184.    As a direct and proximate result of Walmart's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Walmart Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals.

185.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
### (on behalf of the National Class, or in the Alternative, the Statewide Subclasses)

186.    Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

187.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for negligent misrepresentation.

188.    Walmart labeled, marketed, and advertised the Walmart Baby Food Products in a manner indicating that the Walmart Baby Food Products were and are, among other things, naturally flavored, organic, non-GMO, "great for you", and safe for consumption by infants and young children. However, the Walmart Baby Food Products contained, or were at risk of containing, heavy metals that do not conform to the packaging. Therefore, Walmart has made misrepresentations about the Walmart Baby Food Products.

189.    Walmart's misrepresentations regarding the Walmart Baby Food Products are material to a reasonable consumer because they relate to the safety and quality of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Walmart Baby Food Products.

190.    At all relevant times when such misrepresentations were made, Walmart knew or had been negligent in not knowing that the Walmart Baby Food Products contained, or were at risk of containing, heavy metals. Walmart has no reasonable grounds for believing its misrepresentations were not false and misleading.

191.    Walmart intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Walmart Baby Food Products' packaging by Walmart, as well as its advertising, marketing, and labeling of the Walmart Baby Food Products as, among other things, naturally flavored, organic, non-GMO, "great for you", and safe for consumption by infants and young children.

192.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Walmart's negligent misrepresentations when purchasing the Walmart Baby Food Products, and had the correct facts been known, would not have purchased the Walmart Baby Food Products at all.

193.    Therefore, as a direct and proximate result of Walmart's negligent misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Walmart Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy

metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

194.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION
### Intentional Misrepresentation
### (on behalf of the National Class, or in the Alternative, the Statewide Subclasses)

195.    Plaintiffs repeat and reallege the foregoing allegations contained, as though fully set forth herein.

196.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for intentional misrepresentation.

197.    Walmart labeled, marketed, and advertised the Walmart Baby Food Products in a manner indicating that the Walmart Baby Food Products were and are, among other things, naturally flavored, organic, non-GMO, "great for you", and safe for consumption by infants and young children. However, the Walmart Baby Food Products contained, or were at risk of containing, heavy metals that do not conform to the packaging. Therefore, Walmart has made misrepresentations about the Walmart Baby Food Products.

198.    Walmart's misrepresentations regarding the Walmart Baby Food Products are material to a reasonable consumer because they relate to the safety and quality of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Walmart Baby Food Products.

199.    At all relevant times when such misrepresentations were made, Walmart knew that the representations were misleading, or acted recklessly in making the representations, without regard to the truth.

200.    Walmart intended that Plaintiffs and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Walmart Baby Food Products' packaging by Walmart, as well as its advertising, marketing, and labeling of the Walmart Baby Food Products as, among other things, naturally flavored, organic, non-GMO, "great for you", and safe for consumption by infants and young children.

201.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Walmart's intentional misrepresentations when purchasing the Walmart Baby Food Products, and had the correct facts been known, would not have purchased them at all.

202.    Therefore, as a direct and proximate result of Walmart's intentional misrepresentations, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Walmart Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

203.    Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**Quasi Contract/Unjust Enrichment/Restitution**
**(on behalf of the National Class, or in the Alternative, the Statewide Subclasses)**

204.    Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

205.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Walmart for quasi contract, unjust enrichment, and restitution.

206.    As alleged herein, Walmart has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Walmart Baby Food Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Walmart. Plaintiffs and members of the Classes therefore have been induced by Walmart's misleading and deceptive representations about the Walmart Baby Food Products, and paid more money to Walmart for the Walmart Baby Food Products than they otherwise would and/or should have paid.

207.    Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Walmart has retained monies paid to them by Plaintiffs and members of the Classes.  Walmart knowingly and willingly accepted and enjoyed these benefits.

208.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – *i.e.*, Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Walmart.  Walmart either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Walmart Baby Foods would not contain (or have a material risk of containing) heavy metals.

209.    Walmart was obligated to disclose the presence of heavy metals in Walmart Baby Foods because:

A.    Walmart had exclusive knowledge of the presence of heavy metals in Walmart Baby Foods that were not known or reasonably accessible to the Plaintiffs and the Class;

B.    Walmart actively concealed the presence of heavy metals from Plaintiffs and the Classes; and

C.    Walmart made partial statements on Walmart Baby Foods' packaging that gave a misleading impression to reasonable consumers without further information on the presence of heavy metals that had not been disclosed.

210.    Therefore, it is inequitable and unjust for Walmart to retain the profit, benefit, or compensation conferred upon it without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

211.    As a direct and proximate result of Walmart's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Walmart from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CAUSE OF ACTION**
**Violation of the Arkansas Deceptive Trade Practices Act**
**(Ark. Code Ann. §§ 4-88-101, *et seq.*)**
**(on behalf of the National Class, or in the Alternative, the Arkansas Subclass)**

212.    Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

213.   Plaintiffs bring this count individually and on behalf of the Nationwide Class, or in the alternative, Plaintiffs Ainsworth, Coleman, and Neal bring this count individually and on behalf of the Arkansas Subclass.

214.   The Arkansas Deceptive Trade Practices Act prohibits, among other things: (a) deceptive and unconscionable trade practices including, but not limited to, (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; (2) advertising the goods or services with the intent not to sell them as advertised; (3) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade; and (b) in connection with the sale or advertisement of any goods or services, (1) the act, use, or employment by a person of any deception, fraud, or false pretense; or (2) the concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission. *See* Ark. Code Ann. §§ 4-88-101(1-3).

215.   Under the Arkansas Deceptive Trade Practices Act, a person who suffers an actual financial loss as a result of his or her reliance on the use of an unlawful practice may bring an action to recover his or her actual financial loss proximately caused by the offense or violation and reasonable attorney's fees.

216.   At all relevant times, members of the National Class and Arkansas Subclass and Defendant were individuals, organizations, groups, associations, partnerships, or corporations.

217.   Defendant willfully engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it intended others to rely upon in connection with the sale and advertisement of its toxic baby foods.

218.    Because the characteristics of Defendant's toxic baby foods were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented. Because the product defect has actually manifested, Plaintiffs have suffered actual damages as a result of Defendant's conduct.

219.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable because it offends public policy and is so oppressive that the National Class and Arkansas Subclass had little alternative but to submit, which causes consumers substantial injury.

220.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable in that it violates the well-established public policies of protecting children from avoidable dangers and that the retailer of its own private-label food is responsible for ensuring that it is fit for human consumption.

221.    The omissions were material as reasonable consumers such as Plaintiffs and members of the National Class and Arkansas Subclass would deem the presence of heavy metal important in determining whether to purchase Walmart Baby Food Products.  The omissions also relate to the risk of harm presented to infants and young children who consume Walmart Baby Food Products.

222.    Defendant was obligated to disclose the presence of heavy metals in Walmart Baby Food Products because:  (a) Walmart had exclusive knowledge of the presence of heavy metals in Walmart Baby Food Products that were not known or reasonably accessible to Plaintiffs and the Classes; (b) Walmart actively concealed the presence of heavy metals from Plaintiffs and the

Classes; and (c) Walmart made partial statements on Walmart Baby Food Products' labels and packaging that gave the misleading impression to reasonable consumers without further information on the presence of heavy metals that had not been disclosed.

223.    Plaintiffs relied on Defendant's representations when purchasing Defendant's toxic baby foods.

224.    Plaintiffs and members of the National Class and Arkansas Subclass were deceived by Defendant's deceptive and unconscionable acts and practices in that had they known the truth they would not have purchased Defendant's products.

225.    Plaintiffs and members of the National Class and Arkansas Subclass have suffered actual damages in that they purchased the Walmart Baby Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

226.    Plaintiffs and members of the National Class and Arkansas Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### EIGHTH CAUSE OF ACTION
### Violation of Various State Consumer Protection Statutes
### (on behalf of the Statewide Subclasses)

227.    Plaintiffs repeat and reallege the foregoing allegations, as though fully set forth herein.

228.    Plaintiffs Leslie Ainsworth, Tyler Baker, Celia Bruno, Ana Butkus, Susan Canada, Emily Cathey, Brandi Coleman, Jessica David, Dominick Grossi, Sammi Hobdy, April Lockhart, Heather Lowrey, Jolina Manley, Cassandra Martell, Brittany Martin, Tiffany Neal, Robert

Partello, Ashley Popa, Ryan Sanders, Vito Scarola, Julie Secrist, Tabatha Sidi, Margo Tenzo, Megan Troyer, Brittany Wallace, and Teressa Wilson, and Amber Wright bring this count individually and on behalf of the Statewide Subclasses under the law(s) of each Plaintiff's home state and/or place(s) of purchase of the Walmart Baby Food Products.

229.    Each Plaintiff is a "consumer" who purchased Walmart Baby Food Products for each's individual, family, and/or household purposes and the Walmart Baby Food Products constitute "goods" under the relevant consumer protection statute.

230.    Defendant has engaged in deceptive, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiffs and the Statewide Subclasses, as described herein, including the knowing and intentional misrepresentations and omissions described with respect to the marketing, advertising, promotion, packaging, labeling, and sale of the Products.

231.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Walmart Baby Food Products, as detailed above, Walmart engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of various consumer protection statutes, including but not limited to:

      a.      representing that Walmart Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

      b.      representing that Walmart Baby Food Products are of a particular standard, quality, and grade when they are not;

      c.      advertising Walmart Baby Food Products with the intent not to sell them as advertised; and

      d.      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

232.    Defendant's deceptive, unfair, unconscionable, and fraudulent acts and practices have been carried out in the course of conducting Defendant's business, trade, and commerce.

233.    Such acts and practices—including Defendant's intentional efforts to mislead consumers by the misrepresentations and omissions alleged throughout this Complaint—are willful, unfair, unconscionable, deceptive, immoral, unethical, oppressive, unscrupulous, contrary to public policy, and substantially injurious to consumers, including Plaintiffs and the Statewide Subclasses.

234.    Such acts and practices, including Defendant's misrepresentations and omissions, have the capacity to mislead, deceive, and confuse a substantial portion of the public and all reasonable consumers in a material way and have in fact misled, deceived, and confused Plaintiffs and the Statewide Subclasses in a material way, as Defendant intended.

235.    Defendant's intentionally false, deceptive, misleading, and confusing representations and omissions would be material to any ordinary, average, and reasonable consumer's decision whether to buy the Walmart Baby Food Products, given that they pertain to a fundamental and important feature of the Products. No reasonable consumer would have purchased the Products but for Defendant's acts and practices, including its misrepresentations and omissions, described throughout this Complaint.

236.    Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including the misrepresentations and omissions described herein.

237.    Defendant's acts are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being and are motivated solely by the desire for financial gain.

238.     The injuries suffered by Plaintiffs and the Statewide Subclasses are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Statewide Subclasses should have reasonably avoided.

239.     Walmart's violations present a continuing risk to Plaintiffs and members of the Statewide Subclasses as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

240.     As a direct and proximate result of Defendant's deceptive practices, Plaintiffs and the Statewide Subclasses have sustained actual damages, including but not limited any price premium paid, and other damages alleged in this Complaint.

241.     Defendant's acts and practices described herein constitute unfair competition and deceptive, unfair, unconscionable, and fraudulent acts and practices in violation the following state consumer protection statutes:

     a.  Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*;

     b.  Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq.*;

     c.  California Unfair Competition Law, Cal. Bus. and Prof. Code §§ 17200 *et seq.*; and California Consumers Legal Remedies Act, Cal. Civ. Code §§ 17500 *et seq.*;

     d.  Colorado Consumer Protection act, Colo. Rev. Stat. §§ 6-1-101, *et seq.*;

     e.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*;

     f.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq.*, and Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510, *et seq.*;

     g.  Indiana Deceptive Consumer Sales Act, Ind. Code Ann.. § 24-5-0.5-01 *et seq.*;

     h.  Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623 *et seq.*;

i.  Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110 *et seq*.;

j.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401 *et seq*.;

k.  Michigan Consumer Protection Act, Mich. Comp. Law §§ 445.901 *et seq*.;

l.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq*.;

m.  Nebraska Consumer Protection Act, Nev. Rev. Stat. §§ 59-1601 *et seq*.;

n.  New Mexico Unfair Practices Act, N.M. Stat. §§ 57-12-1 *et seq*.;

o.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349; and New York False Advertising Act, N.Y. Gen. Bus. Law § 350;

p.  North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*.,

q.  Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 *et seq*.;

r.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq*.;

s.  Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 *et seq*.;

t.  Utah Consumer Sales Practices Act, §§ 13-11-4(a) *et seq*.; and

u.  Vermont Consumer Protection Act, 9 V.S.A. § 2453 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for following relief:

A.  Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.      A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.      An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.      An order directing Defendant to engage in a corrective advertising campaign;

F.      An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

G.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims presented herein so triable.

Dated: November 12, 2021                       **LYNCH CARPENTER LLP**

        By:    <u>*/s/ Katrina Carroll*</u>

Katrina Carroll (*pro hac vice*)
111 W. Washington St., Ste. 1240
Chicago, IL 60602
Tel.:   312-750-1265
katrina@lcllp.com

Todd D. Carpenter (*pro hac vice*)
Scott G. Braden (*pro hac vice*)
**LYNCH CARPENTER LLP**
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:   619-762-1900
Fax:   619-756-6991
todd@lcllp.com
scott@lcllp.com

Erin Green Comite (*pro hac vice* in 21cv115)
Joseph P. Guglielmo (*pro hac vice* in 21cv115)
Sean T. Masson
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com
smasson@scott-scott.com

***Lead Counsel for Plaintiffs***

Hank Bates
**CARNEY BATES & PULLIAM PLLC**
519 West 7th St.
Little Rock, AR 72201
Tel:    501-312-8500
hbates@cbplaw.com

*Liaison Counsel for Plaintiffs*

Jeffrey K. Brown (*pro hac vice*)
Michael A. Tompkins (*pro hac vice*)
Brett R. Cohen (to apply pro hac vice)
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:    516-873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

Timothy J. Peter (*pro hac vice* in 21cv115)
**FARUQI & FARUQI, LLP**
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
tpeter@faruqilaw.com

Steven L. Bloch (*pro hac vice* in 21cv115)
Ian W. Sloss (*pro hac vice* in 21cv115)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Plaintiffs' Executive Committee*

Aaron M. Zigler (*pro hac vice*)
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com

68

Troy E. Walton
Steve Telken
**WALTON TELKEN, LLC**
241 N. Main Street
Edwardsville, IL 62025
Tel: (618) 307-9880
twalton@waltontelken.com
stelken@waltonteklen.com

Michael L. Roberts
Karen Halbert
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

William E. Hoese (*pro hac vice* in 21cv00182)
Douglas A. Abrahams (*pro hac vice* in 21cv00182)
Craig W. Hillwig (*pro hac vice* in 21cv00182)
Barbara Gibson (*pro hac vice* in 21cv00182)
Aarthi Manohar (*pro hac vice* in 21cv00182)
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
whoese@kohnswift.com
dabrahams@kohnswift.com
chillwig@kohnswift.com
bgibson@kohnswift.com
amanohar@kohnswift.com

David H. Fink
Nathan J. Fink (*pro hac vice* in 21cv00182)
**FINK BRESSACK**
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

***Additional Plaintiffs' Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021 the foregoing document was filed with the Court through its CM/ECF service which shall send electronic notice of said filing to all counsel of record.

/s/ *Katrina Carroll*