# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

## (NORTHERN DIVISION)

| | |
|---|---|
| LESLIE AINSWORTH, TYLER BAKER, CELIA BRUNO, ANA BUTKUS, SUSAN CANADA, EMILY CATHEY, BRANDI COLEMAN, JESSICA DAVID, FELICIA DYKES, DOMINICK GROSSI, GALENA GUTIERREZ, SAMMI HOBDY, APRIL LOCKHART, HEATHER LOWREY, JOLINA MANLEY, CASSANDRA MARTELL, BRITTANY MARTIN, TIFFANY NEAL, ROBERT PARTELLO, ASHLEY POPA, RYAN SANDERS, VITO SCAROLA, JULIE SECRIST, TABATHA SIDI, MARGO TENZO, MEGAN TROYER, BRITTANY WALLACE, TERESSA WILSON AND AMBER WRIGHT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WALMART, INC.; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 3:21-cv-00082-DPM<br><br>Judge:        Hon. D. P. Marshall Jr.<br>Magistrate:  Hon. J. Thomas Ray |

## **<u>TABLE OF CONTENTS</u>**

**Page**

ARGUMENT ........................................................................................................... 3

I.  PLAINTIFFS DO NOT ADEQUATELY ALLEGE AN ECONOMIC INJURY
    BECAUSE THEY FAIL TO PLAUSIBLY ALLEGE THE PURCHASED
    PRODUCTS WERE UNSAFE OR UNFIT FOR CONSUMPTION. ............................... 3

    A.  Plaintiffs Have Not Alleged an Injury in Fact Sufficient to Establish
        Standing. ............................................................................................... 3

    B.  Plaintiffs' Economic Injury Allegations Are Not Sufficient to State a
        Claim. .................................................................................................... 11

        1.  Plaintiffs have not alleged damages as required for their express
            warranty, consumer protection, negligent and intentional
            representation, and fraud by omission claims. ............................ 11

        2.  Plaintiffs have not alleged Walmart's wrongdoing or the unjust
            retention of a benefit as required for their unjust enrichment claim. ........ 13

        3.  Plaintiffs fail to allege Walmart's products did not conform to
            Walmart's affirmations of fact or were unfit for their ordinary
            purpose, requiring dismissal of their implied warranty claim. ................ 14

II. PLAINTIFFS FAIL TO STATE MISREPRESENTATION-BASED CLAIMS
    BECAUSE THEY HAVE NOT IDENTIFIED REPRESENTATIONS THAT
    ARE FALSE, ACTIONABLE, OR A BASIS FOR REASONABLE RELIANCE. ........ 16

    A.  Plaintiffs have not plausibly alleged the falsity of any representations. ............... 16

    B.  Many of the alleged representations constitute nonactionable puffery. ............... 17

    C.  Plaintiffs have not plausibly alleged their reasonable reliance on
        Walmart's purported representations. .................................................... 20

    D.  State-Specific Grounds Require Dismissal of the Negligent
        Misrepresentation Claims under Arkansas, Texas, Pennsylvania, Missouri,
        Florida, and Indiana Law. ...................................................................... 22

III. PLAINTIFFS FAIL TO STATE OMISSION-BASED CLAIMS BECAUSE
     THEY DO NOT PLAUSIBLY ALLEGE A DUTY TO DISCLOSE. ............................ 23

    A.  Under Kansas, Louisiana, Oklahoma, Florida, Arkansas, and Utah Law,
        there is no duty to disclose on the facts of this case. ............................. 24

i

B.    Plaintiffs' allegations are inconsistent with their argument that Walmart had exclusive knowledge of the purportedly omitted information. ...................... 26

C.    Plaintiffs' allegations regarding Walmart's involvement in the Subcommittee investigation do not constitute active concealment. .................... 28

D.    Plaintiffs make no plausible allegations of partial statements of fact that were misleading absent further disclosures, or statements that were later rendered false by new information. ...................................................................... 29

E.    Plaintiffs fail to allege that Walmart knew plaintiffs were entering transactions based on mistaken facts regarding the safety of the products where Plaintiffs do not credibly allege the products were unsafe. ...................... 30

CONCLUSION ................................................................................................................. 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  No. 3:19md2885, 2021 WL 6334085 (N.D. Fla. Sept. 3, 2021)............................................25

*In re 5-Hour ENERGY Mktg. and Sales Practices Litig.*,
  No. MDL 13-2438 PSG, 2017 WL 385042 (C.D. Cal. Jan. 24, 2017)............................15 n.6

*Adams v. Starbucks Corp.*,
  No. SACV 20-00225, 2020 WL 4196248 (C.D. Cal. July 9, 2020) ..................................20, 21

*Adkins v. Nestle Purina PetCare Co.*,
  973 F. Supp. 2d 905 (N.D. Ill. 2013) ............................................................................20 n.10

*Am. Italian Pasta Co. v. New World Pasta Co.*,
  371 F.3d 387 (8th Cir. 2004) ........................................................................................18

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) .........................................................................23

*Badger Cap., LLC v. Chambers Bank of N. Arkansas*,
  650 F.3d 1125 (8th Cir. 2011) .......................................................................................25

*In re Bang Energy Drink Mktg. Litig.*,
  No. 18-cv-05758-JST, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) .............................20 n.10

*Bietsch v. Sergeant's Pet Care Prod., Inc.*,
  No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .........................................19 n.7

*Blanchard & Co. v. Contursi*,
  No. Civ.A. 99–1758, 1999 WL 955363 (E.D. La. Oct. 19, 1999).........................................26

*Boddison v. Gen. Motors LLC*,
  No. 8: 20-cv-2139-WFJ-AEP, 2021 WL 2685770 (M.D. Fla. June 30, 2021).......................25

*Boysen v. Walgreen Co.*,
  No. C 11–06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012)....................................6, 7

*Breeden v. Richmond Cmty. Coll.*,
  171 F.R.D. 189 (M.D.N.C. 1997) .................................................................................27, 28

*Bruton v. Gerber Prods. Co.*,
  No. 12–CV–02412–LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ..........................20 n.8

**Page**

*Bucci v. Wachovia Bank, N.A.*,
591 F. Supp. 2d 773 (E.D. Pa. 2008) ............................................................................27, 28

*Burns v. Winnebago Indus., Inc.*,
No. 8:13–cv–1427–T–24 MAP, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) ...................23

*Burton v. R.J. Reynolds Tobacco Co.*,
397 F.3d 906 (10th Cir. 2005) ..........................................................................................25

*Cardenas v. Toyota Motor Corp.*,
418 F. Supp. 3d 1090 (S.D. Fla. 2019) ..............................................................................23

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ........................................................................20 n.9

*Coghlan v. Wellcraft Marine Corp.*,
240 F.3d 449 (5th Cir. 2001) ............................................................................................12

*Colangelo v. Champion Petfoods USA, Inc.*,
No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) .........................9

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ......................................................................................27 n.11

*Cortina v. Goya Foods, Inc.*,
94 F. Supp. 3d 1174 (S.D. Cal. 2015) ................................................................................17

*Czuchaj v. Conair Corp.*,
No. 13–CV–1901, 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ....................................27 n.12

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ....................................................................................................4, 15

*Donner v. Nicklaus*,
778 F.3d 857 (10th Cir. 2015) ..........................................................................................25

*Elliott-Lewis Corp. v. Skanska USA Bldg., Inc.*,
No. 14-03865, 2016 WL 2346737 (E.D. Pa. May 4, 2016) ....................................................22

*EP Henry Corp. v. Cambridge Pavers, Inc.*,
383 F. Supp. 3d 343 (D.N.J. 2019) ................................................................................19 n.7

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
336 F. Supp. 3d 1256 (D. Kan. 2018) .............................................................................9, 10

*Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*,
985 A.2d 840 (Pa. 2009) ..................................................................................................22

Page

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*,
   178 F. Supp. 3d 390 (E.D. La. 2016) ............................................................26

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
   786 P.2d 1326 (Utah 1990) ...........................................................................25

*Friedman v. Am. Guardian Warranty Servs., Inc.*,
   837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) ................................................24

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
   406 F. Supp. 3d 618 (E.D. Mich. 2019)..................................................27 n.11

*Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank*
   *Indemnification Fund*,
   82 A.3d 485 (Pa. Commw. Ct. 2013) ...........................................................29

*Gonzalez v. Pepsico, Inc.*,
   489 F. Supp. 2d 1233 (D. Kan. 2007) ...............................................10, 15 n.6

*Green v. Bayer Corp.*,
   522 F. Supp. 3d 492 (E.D. Ark. 2021) ..........................................................16

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ..................................................20 n.9

*Hill v. AQ Textiles LLC*,
   No. 1:19CV983, 2021 WL 1026740 (M.D.N.C. Mar. 17, 2021) .............5

*Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc.*,
   382 S.W.3d 6 (Ark. App. Ct. 2011) ..............................................................25

*In re Hydroxycut Mktg. & Sales Pracs. Litig*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ..........................................................10

*Isip v. Mercedes-Benz USA, LLC*
   155 Cal. App. 4th 19 (2007) .........................................................................14

*Johnson v. Atkins Nutritionals, Inc.*,
   No. 2:16–cv–04213–MDH, 2017 WL 6420199 (W.D. Mo. March 29, 2017).......................10

*Johnson v. Gen. Mills, Inc.*,
   No. SACV 10-00061-CJC(ANx), 2011 WL 13225105(C.D. Cal. Mar. 3,
   2011) ...........................................................................................................19 n.7

*Koronthaly v. L'Oreal USA, Inc.*
   374 F. App'x 257 (3d Cir. 2010) .............................................................1, 7

Page

*Lassen v. Nissan N. Am., Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...............................................................7

*Leppert v. Champion Petfoods USA Inc.*,
  No. 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ....................................9

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ...............................................................19 n.7

*Makaryan v. Volkswagen Grp. of Am., Inc.*,
  No. CV 17-5086 PA (KSX), 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017) .........10

*McCaughey v. Liberty Mut. Ins. Co.*,
  No. EDCV 19-1484 JGB(SHKx), 2020 WL 2568303 (C.D. Cal. Jan. 30,
  2020) ...............................................................................................5 n.2, 11, 16

*McKinnis v. Kellogg USA*,
  No. CV 07-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..................18

*Mitchell v. Gen. Motors LLC*,
  No. 3:13–CV–498–CRS, 2014 WL 1319519 (W.D. Ky. Mar. 31, 2014) .............18

*In re Nat. Hockey League Players' Concussion Inj. Litig.*,
  No. MDL 14–2551 SRN, 2015 WL 1334027 (D. Minn. Mar. 25, 2015) ..............27

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. CV 14-00428 MMM(JEMx), 2015 WL 12732461 (C.D. Cal. May 27,
  2015) ...............................................................................................19 n.7

*O'Connor v. Ford Motor Co.*,
  No. 19-cv-5045, 2021 WL 4866353 (N.D. Ill. Oct. 19, 2021) ...............................27

*O'Neil v. Simplicity Inc.*,
  574 F.3d 501 (8th Cir. 2009) ...............................................................13, 14

*Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*,
  No. 1:15–cv–00407–CL, 2016 WL 11187249 (D. Or. Dec. 8, 2016) ....................15

*Passmore v. Multi-Mgmt. Servs., Inc.*,
  810 N.E.2d 1022 (Ind. 2004) ...............................................................23

*In re Plum Baby Food Litig.*,
  No. 4:21-CV-913-YGR, ECF No. 125 (N.D. Cal. Jan. 22, 2022) ...........................8

*Ramel v. Chasebrook Const. Co.*,
  135 So. 2d 876 (Fla. Dist. Ct. App. 1961) ...............................................................24

*Roberts Ranch Co. v. Exxon Corp.*,
  43 F. Supp. 2d 1252 (W.D. Okla. 1997) ...................................................24

*Rose v. HP Inc.*,
  No. 20-cv-02450-VC, 2020 WL 7714532 (N.D. Cal. Dec. 29, 2020)....................................27

*Rush v. Whirlpool Corp.*,
  No. 07-2022, 2008 WL 509562 (W.D. Ark. Feb. 22, 2008).............................................26, 27

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ...................................................23

*Salmeron v. Highlands Ford Sales, Inc.*,
  271 F. Supp. 2d 1314 (D.N.M. 2003) ...................................................27 n.12

*Sciacca v. Apple, Inc.*,
  362 F. Supp. 3d 787 (N.D. Cal. 2019) ...................................................21, 29

*Simpson v. Champion Petfoods USA, Inc.*,
  397 F. Supp. 3d 952 (E.D. Ky. 2019) ...................................................29

*Smith v. Gen. Motors Corp.*,
  979 S.W.2d 127 (Ky. Ct. App. 1998) ...................................................27 n.12

*Specialty Beverages, L.L.C. v. Pabst Brewing Co.*,
  537 F.3d 1165 (10th Cir. 2008) ...................................................24

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................3

*In re St. Jude Med., Inc.*,
  425 F.3d 1116 (8th Cir. 2005) ...................................................12 n.4

*Stickrath v. Globalstar, Inc.*,
  No. C07-1941 THE, 2008 WL 344209 (N.D. Cal. Feb. 6, 2008)....................................28 n.13

*Swersky v. Dreyer & Traub*,
  643 N.Y.S.2d 33 (1996) ...................................................27 n.12

*In re Takata Airbag Prods. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016) ...................................................23

*Telesphere Int'l, Inc. v. Scollin*,
  489 So. 2d 1152 (Fla. Dist. Ct. App. 1986) ...................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................4 n.1

Page

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
110 So. 3d 399 (Fla. 2013)..........................................................................23

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..................................6, 19 n.7, 28

*Tyler v. Alltel Corp.*,
265 F.R.D. 415 (E.D. Ark. 2010).............................................................12 n.4

*U.S. Bank, N.A. v. Integrity Land Title Corp.*,
929 N.E.2d 742 (Ind. 2010) ........................................................................23

*United Indus. Corp. v Clorox Co.*,
140 F.3d 1175 (8th Cir. 1998) ....................................................................31

*Uptegraft v. Dome Petroleum Corp.*,
764 P.2d 1350 (Okla. 1988)........................................................................24

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
MDL No. 2875 (RBK-JS), 2021 WL 222776 (D.N.J. Jan. 22, 2021) ....................15

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................14

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
No. 16-2765 (JLL), 2017 WL 1902160 (D.N.J. May 8, 2017)...............28 n.13

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ................................................................5, 6

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ......................................................................17

*Zarinebaf v. Champion Petfoods USA Inc.*,
No. 18 C 6951, 2019 WL 3555383 (N.D. Ill. July 30, 2019) ....................9

*Zeiger v. Wellpet LLC*,
304 F. Supp. 3d 837, (N.D. Cal. 2018) ................................5 n.2, 8, 17

*Zeiger v. Wellpet LLC*,
526 F. Supp. 3d 652, (N.D. Cal. 2021) ......................................................29

*Zwiercan v. Gen. Motors Corp.*,
58 Pa. D. & C.4th 251 (Com. Pl. 2002).................................................27 n.12

**Statutes**

Lanham Act....................................................................................................31

Page

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................3, 4 n.1

**Other Authorities**

*FDA Letter to Industry on Chemical Hazards, including Toxic Elements, in Food and Update on FDA Efforts to Increase the Safety of Foods for Babies and Young Children* ................................................................................................5, 8

House Subcommittee Report, February 2021 ....................................................4 n.1, 8

House Subcommittee Report, September 2021 ..................................................4 n.1, 8

Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/ healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf................... *passim*

Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS.ORG (September 29, 2021) available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/-a6772370847/................................................................................................... *passim*

Restatement (Second) of Torts § 552 (1977) .............................................................22

## REPLY BRIEF IN SUPPORT OF DEFENDANT
## WALMART INC.'S MOTION TO DISMISS

Under Plaintiffs' theory, a retailer is liable for selling baby foods that comply with food safety regulations and are not alleged to have harmed anyone, because those products contain trace levels of metals that occur naturally in food such as carrots or grains. Tacitly acknowledging that they have not pled physical injury, Plaintiffs argue that they must only plead ***economic*** injury to survive this motion to dismiss. But an economic injury under Article III still requires that Plaintiffs plausibly allege that the products they purchased were worth less than Plaintiffs paid for them because they contained harmful levels of metals, unlike available alternatives. Here, Plaintiffs have "asserted only a subjective allegation that the trace amounts of [metals] in the [products] are unacceptable to [them], not an injury-in-fact sufficient to confer Article III standing." *Koronthaly v. L'Oreal USA, Inc.* 374 F. App'x 257, 259 (3d Cir. 2010).

Moreover, Plaintiffs cannot identify any alternative products that do not contain metals. As the reports Plaintiffs cite in their Complaint explain, naturally occurring metals are unavoidably present in the core ingredients of baby foods (*e.g.*, carrots, grains). Plaintiffs' selective reference to Consumer Reports' self-described "spot check" testing, which found some individual products (not entire product lines) contained low levels of some metals, ignores Consumer Reports' conclusion that "***[e]very product*** had measurable levels of at least one of these heavy metals: cadmium, inorganic arsenic, or lead." Indeed, just like the other reports Plaintiffs cite, Consumer Reports concluded that "[i]t may not be possible to completely eliminate heavy metals from your food," and that even "making your own baby food won't necessarily reduce your child's heavy metal intake."

Finally, the Court should give no credence to Plaintiffs' misuse of the First Subcommittee Report to assert that Walmart (the report actually says Hain) adds mixtures to the products during

the manufacturing process that might increase the metal content; Walmart is not a manufacturer and aside from that misquotation there are no allegations in the Complaint that Parent's Choice products contain additives. Plaintiffs' allegations, when read in their entirety with the reports incorporated by reference, do not allege Article III standing under any theory.

Article III standing aside, Plaintiffs additionally fail to state a claim. Because Plaintiffs do not plausibly allege the harmfulness of the products, the availability of metal-free alternatives, or that the products they received were not as marketed, they do not allege the damages element of their claims. Additionally, because Plaintiffs acknowledge that Walmart made *no* representations about the alleged naturally occurring metals in Parent's Choice baby foods, and the representations Walmart did make were neither false nor misleading, Plaintiffs have not supported their misrepresentation-based claims. And Plaintiffs still fail to identify any legal principle that would require Walmart to disclose the presence of naturally occurring elements in their products, requiring dismissal of Plaintiffs' omission-based claims. On this final point, Plaintiffs' attempt to create the specter of concealment should be rejected by the Court. While Plaintiffs claim that Walmart "refused cooperation" with the House Subcommittee investigation, they acknowledge that Walmart produced documents to the Subcommittee prior to its Second Subcommittee Report, in which the Subcommittee did not allege any concealment and, after reviewing the evidence, did not conclude that any Parent's Choice products were unsafe.

Despite Plaintiffs' attempt to salvage their Complaint through attorney argument, the face of the Complaint shows that Plaintiffs cannot establish standing or state a claim for relief. As further explained below, and for the reasons discussed in Walmart's Motion, the Court should dismiss the Complaint in full.

2

## ARGUMENT

### I.   PLAINTIFFS DO NOT ADEQUATELY ALLEGE AN ECONOMIC INJURY BECAUSE THEY FAIL TO PLAUSIBLY ALLEGE THE PURCHASED PRODUCTS WERE UNSAFE OR UNFIT FOR CONSUMPTION.

Plaintiffs' entire complaint suffers from a fundamental shortcoming: it fails to plausibly allege any economic injury. This shortcoming requires dismissal for two reasons. First, Plaintiffs cannot satisfy the injury requirement for Article III standing, requiring dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Second, it requires dismissal of Plaintiffs' claims under Rule 12(b)(6), as damages are a required element of Plaintiffs' breach of express warranty, misrepresentation, fraud by omission, and consumer-protection law claims. Moreover, because Plaintiffs cannot plausibly allege the products are harmful, they fail to plead that Walmart unjustly obtained a benefit (required for unjust enrichment) or sold products unfit for their ordinary purpose (required for breach of implied warranty).

#### A.   Plaintiffs Have Not Alleged an Injury in Fact Sufficient to Establish Standing.

Plaintiffs' speculative claims of harm do not satisfy the requirement that a plaintiff must allege "'an invasion of a legally protected interest' that is . . . 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 & n.6 (2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs argue that "had they known that the misrepresentations identified in the CAC were untrue, and had they known the material information that Walmart omitted from the packaging, they would not have paid as much for the Baby Food, or would not have purchased it at all." Opp. at 7. But Plaintiffs fail to allege any facts from which the Court can plausibly infer that the products were unsafe or otherwise unfit for consumption, or that, had Plaintiffs known about the presence of naturally occurring metals, Plaintiffs would have purchased available, safer alternatives. Rather, Plaintiffs ask the Court to speculate that *all* Parent's Choice products contain *unsafe* levels of heavy metals because a few

3

public reports found heavy metals in some baby food products, and Plaintiffs' selective testing purportedly found some Parent's Choice products contained varying levels of metals. *See* Compl. ¶¶ 68-71 (citing Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("HBBF Report")), 77-79 (citing *Jesse Hirsch*, Heavy Metals in Baby Food: What You Need to Know, CONSUMER REPORTS.ORG (September 29, 2021) available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/-a6772370847/ ("CR Report")), 80 (citing Plaintiffs' test results), 83 (speculating cited reports and testing suggest "other Walmart Baby Food Products also contain elevated levels of toxic heavy metals"). But Plaintiffs' "'[s]peculative inferences'" are insufficient to establish standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006) (citation omitted).

Indeed, Plaintiffs' theory of harm is undermined by the reports incorporated by reference into the Complaint.[1] *See* CR Report ("[P]arents who have been feeding these foods to their children don't need to panic . . . consuming these foods doesn't guarantee that a child will develop health problems, but that it may simply increase that risk."); HBBF Report at 8 ("Our tests show that most metals are at low levels and by themselves in any given food raise little concern."). And the FDA, rather than pulling products from shelves, has stated that children "are not at an immediate health risk from exposure" to the trace amounts of heavy metals found in the majority of baby food

---

[1]    The following reports are incorporated by reference in Plaintiffs' pleadings and are properly the subject of a 12(b)(6) motion: Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMERREPORTS.ORG (September 29, 2021) available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/-a6772370847/ ("CR Report"); House Subcommittee Report, February 2021 ("First Subcommittee Report"); House Subcommittee Report, September 2021 ("Second Subcommittee Report"); Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods/files/202004/BabyFoodReport_ENGLISH_R6.pdf ("HBBF Report"). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider . . . other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference").

products on the market.[2] *See FDA Letter to Industry on Chemical Hazards, including Toxic Elements, in Food and Update on FDA Efforts to Increase the Safety of Foods for Babies and Young Children*, U.S. FOOD & DRUG ADMINISTRATION, (last visited Feb. 12, 2022), https://www.fda.gov/food/cfsan-constituent-updates/fda-letter-industry-chemical-hazards-including-toxic-elements-food-and-update-fda-efforts-increase ("FDA Letter to Industry").

And, while Plaintiffs allege injuries stemming from their purchase of over 100 Parent's Choice products, only eleven were identified in the cited reports or in the testing relied on by Plaintiffs—and Plaintiffs do not identify any health standards or concentration thresholds necessary to infer that the levels of metal purportedly found in those eleven products make the products unsafe. *See* Compl. ¶¶ 17-45, 80; HBBF Report at 19-26; CR Report. Even if those eleven products did contain harmful levels of metal (an inference that cannot be drawn from the pleadings), Plaintiffs have made the same mistake as the plaintiffs in *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014): they allege that they purchased products from a product line at risk of manifesting a defect, rather than asserting factual allegations that the products they purchased actually exhibited the defect. Likewise, in *Hill v. AQ Textiles LLC*, No. 1:19CV983,

---

[2]     Plaintiffs do not dispute that the Court can judicially notice the HBBF Report, CR Report, First Subcommittee Report, and Second Subcommittee Report, including for the truth of their contents. As to the FDA statements, Plaintiffs concede the Court can take judicial notice of the statements, but insist the Court cannot notice them for their truth. Opp. at 5 n.2. Walmart does not ask the Court to notice the FDA statements for their truth. Instead, the existence of these statements—which emphasize that the level of naturally occurring metals in baby foods are not cause for alarm and set a timeline for further investigating and regulating this space through 2024—demonstrates that the primary watchdogs for food safety are issuing statements contradictory to Plaintiffs' allegations, and that research in this area is ongoing. *Cf. Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 845 (N.D. Cal. 2018 ("The contents of the Target Animal Safety Review themselves are the result of a reasonable scientific dispute; plaintiffs provide further evidence that other professionals have disputed those conclusions."). Consequently, the existence of Exhibits A and B serve two important purposes: (1) they undermine Plaintiffs' alarmist allegations regarding safety, and (2) they demonstrate that any alleged misrepresentations about the health and safety of these products cannot have been the sort of positively false statements necessary to sustain Plaintiffs' misrepresentation and omission claims. *McCaughey v. Liberty Mut. Ins. Co.*, No. EDCV 19-1484 JGB SHKx, 2020 WL 2568303, at *4 (C.D. Cal. Jan. 30, 2020).

2021 WL 1026740, at *3 (M.D.N.C. Mar. 17, 2021), the court dismissed for lack of standing where the plaintiffs argued that they had paid for bedsheets with a particular thread count but had "fail[ed] to make any allegations as to the actual thread count of the sheets they purchased," relying only on the defendants' alleged "exclusive knowledge concerning the actual thread count." Plaintiffs' failure to allege the presence of *any* metals in the vast majority of the products at issue is therefore insufficient to establish injury in fact as to those products. *See Wallace*, 747 F.3d at 1030 (holding that "[w]ithout any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue"). Plaintiffs primarily rely on *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010), but that case is distinguishable. There, although the defect had not manifested in all of the plaintiffs' cars, the court found that the plaintiffs alleged an injury in fact because the public knowledge of the alleged defects impacted the value of the plaintiffs' cars and caused some plaintiffs to sell their cars at a loss—an injury that the court found "actual or imminent." *Id*. at 1162. A similar fact pattern is not alleged or present here. In fact, even as to the eleven products discussed in the public reporting and in Plaintiffs' selective testing, there is no basis to infer that those products contain a "defect" merely because they purportedly contained varying levels of naturally occurring metals due to their inclusion of common and nutritious baby food ingredients like carrots and sweet potatoes.

For the small subset of products Plaintiffs tested (*see* Compl. ¶ 80), the trace amounts of naturally occurring metals reported do not establish an injury in fact. *Boysen v. Walgreen Co.*, No. C 11–06262 SI, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012), a case involving similar claims dismissed for lack of standing, is instructive. There, the plaintiff alleged that the defendant had misleadingly marketed apple and grape juice as "healthy and safe" while not disclosing allegedly

"'material and significant' levels of arsenic and lead,'" in excess of FDA regulations for bottled water. *Id.* The court dismissed on standing grounds, holding the allegations were insufficient because "[p]laintiff ha[d] plead that arsenic and lead are harmful toxins, and that the products contain those toxins, but he d[id] not expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm" or that "any person has ever been injured by the products." *Id.* at *7. Similarly, in *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016), the court dismissed consumer fraud claims for lack of standing and noted that "because Plaintiffs have expressly limited themselves to economic damages, they cannot base standing on their 'concern' about future personal injury." And in *Koronthaly v. L'Oreal USA, Inc.* 374 F. App'x 257 (3d Cir. 2010), the plaintiff alleged she was misled into purchasing an "unsafe" product because the defendant did not disclose that its lipstick contained trace amounts of lead. *Id.* at 259. The court found that the plaintiff's claim was "belied by the FDA's report finding that the lead levels in the Defendants' lipsticks were not dangerous" and held that "[a]bsent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect," the plaintiff had "not demonstrated a concrete injury-in-fact." *Id*. The same is true here: Plaintiffs' cited reports and testing demonstrate that the levels of metal purportedly contained in baby food products like those sold by Walmart are not unsafe, and Plaintiffs' allegations that they would rather the baby food contain no heavy metals is not a basis for standing. "A number of courts have rejected for lack of standing or injury similar attempts to recast no-injury products-liability claims (which are not cognizable) as consumer fraud claims for contract-like economic damages (which *may* be cognizable)." *Lassen*, 211 F. Supp. 3d at 1281 (collecting cases).

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018) does not save Plaintiffs' claims. That case was not limited to naturally occurring metals that are unavoidably present in the food supply; rather, it additionally alleged that dog foods were *contaminated* by an indisputably toxic and unnatural industrial chemical, Bisphenol A. *Id.* at 842. There are no such credible allegations here. The Complaint misquotes the First Subcommittee Report in alleging that "'baby food producers like Walmart' are compounding the problem by 'adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix.'" Compl. ¶ 65. The Report actually claimed that "baby food producers like **Hain** may be adding ingredients . . . such as vitamin/mineral pre-mix." First Subcommittee Report at 5 (emphasis added); *see id.* at 56. By contrast, Walmart is not a "producer" or manufacturer of baby food—as both the Complaint and the Subcommittee recognized, *see* Compl. ¶ 6; Second Subcommittee Report at 21—and the Complaint does not allege that Parent's Choice baby food products contain additives.

Plaintiffs' bid for standing is similarly unsupported by the other cases cited in the Opposition. Plaintiffs' citation to *In re Plum Baby Food Litig.*, No. 4:21-CV-913-YGR, ECF No. 125 (N.D. Cal. Jan. 22, 2022), for example, proves Walmart's point regarding the safety of its products, as the court in that case actually dismissed plaintiffs' breach of implied warranty claim, finding the assertion that baby food products contained heavy metals did not amount to a plausible allegation that they were unfit for consumption. *Id.*; *see also* FDA Letter to Industry ("[A]t the levels we have found through our testing, children are not at an immediate health risk from exposure to toxic elements in foods.").

The other pet food cases cited by Plaintiffs illustrate the distinction between an adequately pled complaint and the one here. *See* Opp. at 10 (citing *Colangelo v. Champion Petfoods USA,*

*Inc.*, No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020); *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2019 WL 3555383 (N.D. Ill. July 30, 2019); *Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019)). Unlike here, in each of those cases, plaintiffs alleged that they were injured by paying a premium for defendants' products because they contained higher levels of heavy metals than other pet foods on the market. *See* Compl. ¶¶ 17, 19, 101, *Colangelo*, 2020 WL 777462, ECF 54; Compl. ¶¶ 19-20, 100, *Zarinebaf*, 2019 WL 3555383, ECF 26; Compl. ¶¶ 40, 42, 77, *Leppert*, 2019 WL 216616, ECF 1. Here, in contrast, Plaintiffs allege that they would have preferred to buy "other baby foods that do not contain . . . heavy metals" at all. Compl. ¶ 100; *see also id.* ¶ 47. But Plaintiffs do not identify any such alternatives—and indeed, the reports Plaintiffs incorporate by reference in the Complaint suggest that such alternatives do not exist. *See, e.g.*, HBBF Report at 2 ("[P]arents can't shop their way out of these exposures by choosing organic foods or by switching from store-bought brands to homemade purees."); *id*. at 3 (finding that rice-based foods "nearly always" contain all four metals); CR Report ("It may not be possible to completely eliminate heavy metals from your food."); *id.* ("[M]aking your own baby food won't necessarily reduce your child's heavy metal intake."). In an attempt to manufacture the existence of alternative products, Plaintiffs selectively cite Consumer Reports' claim that some individual products it in its "spot check" testing were found to contain lower levels of at least one tested metal, but omit their conclusion that "[e]very product had measurable levels of at least one of these heavy metals: cadmium, inorganic arsenic, or lead." CR Report.

Many of the other cases cited by Plaintiffs involved plausible allegations that a safer or more effective alternative was available or that the product presented a concrete and realized danger. *See* Opp. at 8-9. For example, in *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales*

*Pracs. & Antitrust Litig.,* 336 F. Supp. 3d 1256, 1332 (D. Kan. 2018), the plaintiffs alleged that "they would have purchased other versions of the EpiPen (both branded and generic) at lower cost." And *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 999, 1000 (S.D. Cal. 2011), concerned a defective weight loss drug whose "formula was never clinically proven to be effective for weight loss" and which had been the subject of an FDA "press release warning consumers to immediately stop using" the product, "based on reports of serious health problems." *See also Johnson v. Atkins Nutritionals, Inc.*, No. 2:16–cv–04213–MDH, 2017 WL 6420199, at *1 (W.D. Mo. March 29, 2017) (finding that the plaintiff had standing where the defendant used an inaccurate formula to calculate carbohydrates on its labeling); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1238 (D. Kan. 2007) (finding the same where the plaintiff alleged other manufacturers eliminated the toxin at issue). These cases are inapplicable: Plaintiffs do not plausibly allege that any Walmart baby food products were defective or that safer, more effective alternatives were available. That failure to identify available alternatives is fatal to Plaintiffs' bid for standing. In an analogous case, the court dismissed for lack of standing a complaint alleging overpayment for a defective vehicle where the plaintiff had "not pleaded facts demonstrating the existence of a similarly equipped [] vehicle" without the alleged defect that could "be leased for a lower sum than Plaintiffs' current lease." *Makaryan v. Volkswagen Grp. of Am., Inc.*, No. CV 17-5086 PA (KSX), 2017 WL 6888254, at *5 (C.D. Cal. Oct. 13, 2017) (citation omitted). It was not enough for the plaintiff to allege "that she would have leased a different vehicle," where she did "not allege that such vehicles are cheaper." *Id.*

At bottom, Plaintiffs claim they "lost the benefit of the bargain," which they define as "the difference between the Baby Food that Plaintiffs reasonably believed they purchased and the Baby Food they actually received." Opp. at 9. However, Plaintiffs allege they believed they were

purchasing products that were nutritious and safe for consumption, and they have not plausibly alleged any facts suggesting the products were *not* nutritious and safe. Plaintiffs' conclusory allegations are therefore insufficient to establish standing under Article III, and the Complaint should be dismissed in its entirety.

### B.   Plaintiffs' Economic Injury Allegations Are Not Sufficient to State a Claim.

Plaintiffs fail to plausibly allege that they suffered any economic injury as a result of purchasing Parent's Choice baby food products. This deficiency in the Complaint is an independent reason to dismiss nearly every claim.

   1.   *Plaintiffs have not alleged damages as required for their express warranty, consumer protection, negligent and intentional representation, and fraud by omission claims.*

Because Plaintiffs do not plausibly allege that the products they purchased contained unsafe levels of heavy metals, they have failed to plead damages, requiring dismissal of Plaintiffs' claims for breach of express warranty, violation of consumer-protection statutes, negligent misrepresentation, intentional misrepresentation, and fraud by omission.[3]

Plaintiffs argue that the cases cited by Walmart are irrelevant here because they involved allegedly defective products, while "this is a classic false advertising and deceptive trade practices case." Opp. at 12. But Plaintiffs fail to identify a single representation that was actually ***false*** or plausibly allege that they received something less valuable than advertised. *See McCaughey v. Liberty Mut. Ins. Co.*, No. EDCV 19-1484 JGB (SHKx), 2020 WL 2568303, at *4 (C.D. Cal. Jan. 30, 2020) (dismissing negligent misrepresentation claim and noting that it requires "a false positive

---

[3]   Damages are a required element of breach of express warranty in all jurisdictions except Arkansas, Alabama, and North Carolina; of consumer-protection statutes in all jurisdictions except New Mexico and Pennsylvania; and of intentional misrepresentation except in New Mexico. *See* Mot. at 13 n.2. However, as further explained herein, those claims should still be dismissed for lack of standing and failure to plausibly plead actionable misrepresentations or omissions.

assertion or assertion of fact" (citation omitted).[4] In fact, Plaintiffs' primary case, *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n.4 (5th Cir. 2001), supports Walmart's position. In that case, the plaintiffs purchased a boat that the defendant marketed as made entirely of fiberglass, but the plaintiffs later discovered the boat was made of a less durable wood-fiberglass hybrid. *Id.* at 451. The court found that the plaintiffs' claims were viable because they "assert they were promised one thing but were given a different, less valuable thing." *Id.* at 455 n.4. In order to credibly argue that the Walmart products Plaintiffs bought were "less valuable" than advertised, they must plausibly allege that the products were advertised as safe and were not. Here, Plaintiffs have not plausibly alleged that the products were anything other than as marketed.

Plaintiffs do not meaningfully engage with Walmart's argument that they must identify alternative products that do not contain heavy metals. Plaintiffs argue that 32% of the products tested in the CR Report did not have "worrisome" levels of metal, and they allege for the first time in their Opposition that those products would be suitable alternatives. Opp. at 13 n.7. Notably, however, Consumer Reports did not define "worrisome," and the report did not find that those other products, which it describes as being of "less concern," were free of naturally occurring

---

[4]     Plaintiffs' response to Walmart's choice of law analysis is incorrect. *See* Opp. at 7 n.3. To the extent Plaintiffs are arguing that the Court should disregard differences in underlying substantive law and certify a nationwide class, that argument is both premature (this litigation has not reached the class certification stage) and incorrect. As Plaintiffs' own case, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005), recognized in reversing the certification of a nationwide class, the "Supreme Court has held an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action[,]" and "courts must respect these differences [in state consumer protection laws] rather than apply one state's law to sales in other states with different rules" (citation omitted). Moreover, Walmart's motion to dismiss explained why the laws of the state where the transaction occurred should govern each plaintiff's claim, under established Arkansas choice-of-law principles. Mot. at 8 n.v; *see Tyler v. Alltel Corp.*, 265 F.R.D. 415, 425-27 (E.D. Ark. 2010). Plaintiffs offer no contrary authority. Finally, Plaintiffs' suggestion that Arkansas law applies to all claims is inconsistent with Plaintiffs' own opposition brief, which relies heavily on law from California (and numerous other jurisdictions).

metals.[5] *See* CR Report ("It may not be possible to completely eliminate heavy metals from your food."). Here, Plaintiffs allege that they would not have purchased Walmart's products (or would have paid less for them) had they known they contained or were at risk of containing *any* naturally occurring metals. *See* Compl. ¶¶ 46, 100, 108, 171, 184; Opp. at 13. Because Plaintiffs have not identified any baby food products that do not contain any heavy metals, they fail to allege the existence of alternative products necessary to establish their theory of pecuniary harm.

Finally, Plaintiffs are wrong to assert that Walmart's argument about the safety of its products is merits-focused. Opp. at 14. Walmart's arguments attack the sufficiency of the Complaint itself. This includes the allegations and the materials Plaintiffs voluntarily incorporated by reference, which establish that heavy metals are naturally occurring and do not render baby food products unsafe. *See*, *e.g.*, HBBF Report at 2 ("Heavy metals are naturally occurring in soil and water. . . . Food crops uptake these metals naturally.").

> 2. *Plaintiffs have not alleged Walmart's wrongdoing or the unjust retention of a benefit as required for their unjust enrichment claim.*

Because Plaintiffs fail to allege that the products they purchased contained dangerous levels of heavy metals, they have not alleged that Walmart unjustly retained a benefit at Plaintiffs' expense. Plaintiffs argue that, unlike in *O'Neil v. Simplicity Inc.*, 574 F.3d 501 (8th Cir. 2009), "Plaintiffs in this case did not get what they paid for—healthy baby food suitable for consumption by infants and very young children." Opp at 15. Thus, Plaintiffs admit that they must plausibly allege the products they purchased were unhealthy and unsuitable for consumption. But, as explained, Plaintiffs have not pled factual allegations to support that claim; to the contrary, the

---

[5]    Indeed, because the CR Report did not provide a standard for what makes a product "less concerning," Plaintiffs do not and cannot allege facts establishing that the products they purchased are not among those "less concerning" products.

documents they cite undermine it. Absent such factual allegations, Plaintiffs cannot maintain an unjust enrichment claim. *See O'Neil*, 574 F.3d at 504 (affirming dismissal of unjust enrichment claim and noting, "because the O'Neils' crib has not exhibited the alleged defect, they have necessarily received the benefit of their bargain.").

3.   *Plaintiffs fail to allege Walmart's products did not conform to Walmart's affirmations of fact or were unfit for their ordinary purpose, requiring dismissal of their implied warranty claim.*

In their Opposition, Plaintiffs assert two bases for their breach of implied warranty claim: Walmart's products do not "conform to the promises or affirmations of fact made on the container or label," and they are not "fit for the[ir] ordinary purpose." Opp. at 16. Neither basis is supported by factual allegations in the Complaint. Plaintiffs fail to allege that Walmart's products did not conform to the affirmations of fact made on the packaging. *See infra* Section II. And in failing to allege that the products they purchased contained dangerous levels of heavy metals, Plaintiffs also have not plausibly alleged that those products were unfit for their ordinary purpose, consumption. *See supra* Section I(A). As demonstrated by the cases cited by Plaintiffs, this failure is fatal to their implied warranty claim. *See Isip v. Mercedes-Benz USA*, LLC, 155 Cal. App. 4th 19, 27 (2007) ("Defining the warranty in terms of a vehicle that is in safe condition and substantially free of defects is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used." (internal quotations omitted)); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (dismissing an implied warranty claim where the plaintiff did "not allege any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink").

Plaintiffs' argument that "the manufacturing process increases the amount of heavy metals and that certain manufacturing processes lessen the amount of heavy metals," Opp. at 17, is premised on mistaken assumptions. Walmart is not a manufacturer, and the Complaint does not allege Walmart takes any action in the manufacturing process that would increase the amount of

heavy metals. In raising this argument, therefore, Plaintiffs "introduce yet another level of conjecture to their already hypothetical claim of injury." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 350 (2006). Moreover, Plaintiffs' attempt to categorize this case with cases about "contaminants" is unavailing, because the reports incorporated by the reference into the Complaint make clear that these metals are naturally occurring and unavoidably present in the food supply. *See* Opp. at 17. The toxic contaminants that allegedly rendered products unfit for their ordinary purpose in Plaintiffs' cases are not analogous to the trace amounts of natural occurring metals alleged in this case.[6] For example, in *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, MDL No. 2875 (RBK-JS), 2021 WL 222776, at *1, 16 (D.N.J. Jan. 22, 2021), the defendants' drugs contained "cancer-causing contaminants," rendering them "economically worthless . . . by virtue of the dangerousness caused by their contamination." *See also Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*, No. 1:15–cv–00407–CL, 2016 WL 11187249, at *8 (D. Or. Dec. 8, 2016) (explaining the products at issue contained the pesticide DDE, rendering them unfit to be sold anywhere in the U.S.). Plaintiffs do not explain how metals that are equally present in raw grains, fruits, and vegetables can render products economically worthless, or unfit for use, and their implied warranty claim should be dismissed.

---

[6] Plaintiffs cite *In re 5-Hour ENERGY Mktg. and Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2017 WL 385042, at *12 (C.D. Cal. Jan. 24, 2017) for the proposition that "a product is not merchantable or fit for its ordinary purpose if it's contaminated." Opp. at 17. But that case concerned whether the defendant's product provided the level of energy promised on the label; it did not concern contamination. Plaintiffs also cite *Gonzalez v. Pepsico*, 489 F. Supp. 2d 1233 (D. Kan. 2007), where the court found that the plaintiffs alleged a cognizable defect based on "the tendency of defendants' beverage products to contain benzene." *Id.* at 1247. Crucially, unlike the heavy metals at issue in this case, benzene is an avoidable, toxic substance that the court noted was not found in the beverage products of other manufacturers. *Id.* at 1238. But no such cognizable defect is alleged here, where Plaintiffs only attempt to allege the presence of trace amounts of heavy metals that Plaintiffs' cited reports show are found in practically all baby foods.

II.   **PLAINTIFFS FAIL TO STATE MISREPRESENTATION-BASED CLAIMS BECAUSE THEY HAVE NOT IDENTIFIED REPRESENTATIONS THAT ARE FALSE, ACTIONABLE, OR A BASIS FOR REASONABLE RELIANCE.**

Plaintiffs' intentional and negligent misrepresentation, breach of express warranty, and fraud-based consumer protection claims must also be dismissed because Plaintiffs have not plausibly alleged the falsity of any statements made by Walmart, primarily rely upon non-actionable puffery rather than statements of fact, and fail to allege reasonable reliance.

A.   **Plaintiffs have not plausibly alleged the falsity of any representations.**

Plaintiffs' attempts in the Opposition to shore up their misrepresentation-based claims fail because Plaintiffs fail to identify any false statements of fact. *See generally* Mot. at 17-18. Because Plaintiffs do not plausibly allege that Walmart's products are unsafe or in any way lack the qualities Walmart represents them to have, the fundamental element of falsity required by these claims is missing. Indeed, Plaintiffs do not contest that Walmart's descriptions of Parent's Choice baby food products as "organic," "naturally flavored," and "non-GMO" are accurate. *See* Mot. at 17-18.

Plaintiffs also fail to rebut the authorities cited by Walmart in its Motion. Plaintiffs do not—and cannot—dispute the points of law in the dozens of cases cited by Walmart, *see generally* Mot. at 18 n.5, and instead focus on just two cases. Their attempt to distinguish *McCaughey v. Liberty Mut. Ins. Co.*, No. EDCV 19-1484 JGB (SHKx), 2020 WL 2568303 (C.D. Cal. Jan. 30, 2020), simply restates the holding, which supports Walmart's argument. Indeed, *McCaughey* explained that while "negligent misrepresentation does not require scienter, [ ] this lesser mental state 'is balanced by its requirement of a false positive assertion or assertion of fact, and not a mere implied assertion.'" *Id.* at *4. More importantly, Plaintiffs seek to distinguish *Green v. Bayer Corp.*, 522 F. Supp. 3d 492, 500 (E.D. Ark. 2021), while ignoring that the court held that a "statement that [representations] were false is not sufficient" to state a claim for breach of express

warranty. Instead, the plaintiff must plead facts demonstrating falsity. *See* Mot. at 18 and n.5. Plaintiffs have failed to do so.

Meanwhile, Plaintiffs cite cases that do not support their argument. In *Zeiger v. WellPet LLC*, the plaintiff alleged that dog foods were misrepresented as "natural, safe, and pure" because they contained elements including Bisphenol A—an "industrial chemical" additive—in addition to lead and arsenic. 304 F. Supp. 3d 837, 843, 851-52 (N.D. Cal. 2018). In other words, the *Zeiger* plaintiff alleged more than the presence of naturally occurring metals. Plaintiffs' case *Williams v. Gerber Products Co.*, 552 F.3d 934, 936, 939 (9th Cir. 2008) dealt with (among others) the allegation that "fruit juice snacks" did not in fact contain the oranges, peaches, strawberries, and cherries depicted on the packaging, but only contained white grape juice. Here, as is apparent from the photographs contained in the Complaint, Parent's Choice packaging did not contain any representations or images that suggested anything about the presence or absence of heavy metals. *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174 (S.D. Cal. 2015) is also distinguishable because the specific "amount" of contaminant that the products at issue allegedly contained were "believed to expose consumers to substantial potential health risks"—in contrast to this case, where Plaintiffs identify no authority claiming that the amounts of metals at issue threaten "substantial potential health risks." *Id.* at 1193, 1198. To the contrary: the HBBF Report's tests showed "that most metals are at low levels and by themselves in any given food raise little concern." HBBF Report at 8.

## B. Many of the alleged representations constitute nonactionable puffery.

Plaintiffs next argue that that their allegations "establish actionable misrepresentations and warranties when viewed in connection with the imagery on the products themselves," accusing Walmart of "selectively" choosing statements "to argue that all the explicit statements" relied on by Plaintiffs are puffery. Opp. at 25. Plaintiffs are wrong. Walmart is not arguing that every claim it makes about its products is puffery. But certain representations relied on by Plaintiffs are clearly

not statements of fact, and therefore cannot constitute actionable misrepresentations. Even taken in combination with other aspects of the packaging, the statements "great for you," "trust and safety guarantee," and "trusted by parents across the country to provide quality, affordable baby food products," Compl. ¶¶ 7, 101, are "vague or highly subjective claims of product superiority," *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004). This is the quintessential definition of puffery, as Plaintiffs acknowledge. *See* Opp. at 24 (quoting *Am. Italian Pasta Co.*, 371 F.3d at 390-91).

Plaintiffs do not dispute that a court can dismiss claims on puffery grounds at the motion to dismiss stage. *See* Mot. at 18-19 (citing cases). To avoid this settled case law, however, they rely on a manufactured distinction: they characterize the cases Walmart cites as involving representations that were "unremarkably vague, non-specific, subjective, or related only to the superiority of the product," Opp. at 27, while claiming that the phrase "great for you" is somehow "specific" and "measurable," Opp. at 21. But that reading is not consistent with the case law on puffery. *See, e.g.*, *Mitchell v. Gen. Motors LLC*, No. 3:13–CV–498–CRS, 2014 WL 1319519, at *8 (W.D. Ky. Mar. 31, 2014) (holding that "statements from GM's marketing and advertising materials that describe the [vehicle] as being 'safe,' 'reliable,' and essentially 'more for your money'" were "mere puffing" because they did "not refer to any specific factual attributes"). Similarly implausible is Plaintiffs' argument that the brand name "Parent's Choice" is a statement of quantifiable value rendered false by the presence of naturally occurring heavy metals. Opp. at 22. Parent's Choice is a line of many products, of which baby food is only one, and Plaintiffs do not identify any authority suggesting that a brand name can be the basis of a claim for misrepresentation. *See McKinnis v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (rejecting claim that the name "Froot Loops" would

18

deceptively indicate real fruit content, and noting that the word "froot" "appears in the trademarked name of the cereal, not on its own or as a description of the actual ingredients of the cereal"). Although there may be some cases where vague statements combine with assertions of fact to create an overall misleading effect, this case is not one of them. None of Walmart's more concrete representations (the phrases "organic," "naturally flavored," and "Non GMO," the usage of the "U.S.D.A. organic logo," and descriptions of the "target age of the child-consumer"), Opp. at 22, could suggest to a reasonable consumer that naturally occurring metals have been processed out of the products. Moreover, Plaintiffs do not suggest that any of those more concrete representations are false.

Plaintiffs' own cases are distinguishable and predominantly fall into three broad categories, none of which are at issue here. First, Plaintiffs rely on a host of cases that analyzed concrete representations about a product's capabilities by reference to testing or to comparisons with competitors' products, which is not alleged here.[7] Second, Plaintiffs cite authority that involved

---

[7]   *See EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 351-52 (D.N.J. 2019) (relying on on the defendant's "statements of side-by-side comparisons of the attributes of competitive products," as well as claims of a "unique manufacturing process and 'proprietary' formula," to find that representations were not puffery); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011) (holding that the defendants' use of the words "clinically proven" transformed "a statement that might otherwise be considered puffery, i.e., that the Products will help babies sleep . . . into something that appears 'both specific and measurable'" (citations omitted)); *Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *4 (N.D. Ill. Mar. 15, 2016) (noting that the defendant promised a "'guaranteed analysis' of the essential nutrients contained in the Pur Luv Treats in accordance with the 'AAFCO Dog Food Nutrient Profiles,'" suggesting that the "nutrition claims are tested and verifiable"); *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM(JEMx), 2015 WL 12732461, at *11 (C.D. Cal. May 27, 2015) (noting the defendant's "implied assertion" that its products were "healthier or safer than traditional cigarettes" and reasoning that "[w]hether the NJOY King is safer or healthier than normal cigarettes because it contains less dangerous additives is capable of verification through comparative research"); *Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2011 WL 13225105, at *2 (C.D. Cal. Mar. 3, 2011) (holding that statements were actionable because the defendant's advertising compared the product at issue with "normal yogurt"); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1177 (plaintiff alleged that the defendant had made "specific misdescriptions" of its products, including that its braking technology allowed for "shorter activation times" than ordinary brakes").

specific regulatory requirements for labeling, which are not at issue here.[8] Third, Plaintiffs rely on

cases about additives, which are not alleged here.[9] Finally, Plaintiffs suggest that representations

about "health and safety" fall under a blanket exception to the puffery doctrine, Opp. at 26, but the

case law refutes that theory. *See* Mot. at 18-20 (collecting cases dismissing claims based on

representations about health or safety).[10]

### C.   Plaintiffs have not plausibly alleged their reasonable reliance on Walmart's purported representations.

In support of their reliance argument, Plaintiffs reiterate the same flawed arguments found

in their analysis of the puffery case law. Plaintiffs cite only one new case to suggest that consumers

can reasonably rely on representations having nothing to do with heavy metals. But that case does

not support Plaintiffs. In *Adams v. Starbucks Corp.*, No. SACV 20-00225 JVS(KESx), 2020 WL

4196248, at *6 (C.D. Cal. July 9, 2020), the plaintiff alleged that Starbucks sold different sizes of

coffee drinks while disclosing "increased price and caloric intake" but not disclosing that the larger

drinks did not all contain increased amounts of caffeine. The court held that the information about

price and caloric intake, combined with the "increased size of the drink," related "to the content of

---

[8]   *See Bruton v. Gerber Prods. Co.*, No. 12–CV–02412–LHK, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) (noting that "the 'Healthy' claims in this case are covered by federal and state regulations that impose specific labeling requirements and which assume that consumers rely on health-related claims on food products").

[9]   *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (plaintiffs alleged that the product at issue contained "dangerous additives," putting it at odds with labels that claimed the product was "wholesome"); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1083 (N.D. Cal. 2017) (analyzing descriptors like "nutritious," "essential nutrients," and "wholesome" in the context of a claim that the defendant "added sugar" to its products).

[10]   Plaintiffs' remaining two cases do not support their arguments, either. *In re Bang Energy Drink Mktg. Litig.*, No. 18-cv-05758-JST, 2020 WL 4458916, at *9 (N.D. Cal. Feb. 6, 2020) found that the phrase 'Super Creatine' was actionable because the defendant used it to "qualify an ingredient about which [defendant made] specific claims;" the court also recognized, however, that the word "super" would "in isolation" be "the kind of subjective term[] that [is] typical of puffery." *Id.* (first and second alterations in original) (citations omitted). In *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013), the defendants did not even argue that the claim of "wholesomeness"—a representation not at issue here—was puffery, and the court concluded it was not, in one sentence of reasoning.

the drink[,] which would include the caffeine content;" these partial disclosures therefore supported the plaintiff's claim for deception by omission. *Id.* In making its point, the court contrasted its case with *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019). There, the court dismissed misrepresentation claims based on an alleged defect in Apple Watch screens because the alleged misrepresentations focused on "the waterproof nature of the Watch, the brightness of its screen, the dual-core processor," and other features and did not "have anything to do with the Watch screen itself." *Id.* at 799. Analogous to the plaintiffs in *Sciacca*, Plaintiffs here allege they were misled by true claims about USDA "organic" approval, natural flavoring, and the age of the target demographic. None of these characteristics are influenced by or have a bearing on the presence of naturally occurring metals.

Plaintiffs also mischaracterize Walmart's reliance argument as being that Plaintiffs should have "research[ed]" the heavy metals content of Parent's Choice baby food products. This mistakes the dividing line that the law recognizes between reasonably available information— here, publicly reported-on investigations—and hidden facts that are known only to the defendant. *See* Mot. at 20-21. Here, at least four reports have been published on the alleged heavy metals content of baby foods. In fact, the Consumer Reports article had already been published by the time Plaintiffs made at least some of their alleged purchases. *See* Compl. ¶¶ 17-45 (most Plaintiffs allege having purchased products through 2018 or later). Thus, the cases cited in Walmart's motion apply here and defeat Plaintiffs' reasonable reliance argument. *See* Mot. at 20. Plaintiffs' cases (Opp. at 29 n.11) are not on point because they analyzed the argument that consumers should review ingredient lists or websites to test the accuracy of representations made on packaging. Here, there is no question of Walmart failing to disclose an ingredient (or even the amount of an ingredient), or suggesting that products contained something they did not. Instead, Plaintiffs argue

that they were unaware that levels of heavy metals—which have never been shown to harm anyone and which no retailer in the industry is required to disclose—may occur naturally within some Parent's Choice baby food products. Especially after four public reports on the matter, Plaintiffs cannot reasonably claim that the facts about naturally occurring heavy metals in some ingredients used in baby foods were hidden to them.

### D. State-Specific Grounds Require Dismissal of the Negligent Misrepresentation Claims under Arkansas, Texas, Pennsylvania, Missouri, Florida, and Indiana Law.

Plaintiffs' attempt to muddy the waters of state law on negligent misrepresentation does not diminish the basic point: that Plaintiffs have failed to state a claim under the laws of any of these jurisdictions. First, Plaintiffs offer no response to Walmart's argument that the tort of negligent misrepresentation is not recognized in Arkansas; that the economic loss rule bars negligent misrepresentation claims in Utah, and that Texas recognizes the tort only in the context of a "professional" conveying information "to a known party for a known purpose"—a circumstance not present here. Mot. at 21 n.8. The Court should therefore dismiss the Arkansas, Utah and Texas plaintiffs' negligent misrepresentation claims.

Second, Plaintiffs do not cite any controlling authority in Pennsylvania, Missouri, and Florida that renders the economic loss rule inapplicable. Although it is true that Pennsylvania has partially adopted § 552 of the Restatement, it has confined that adoption to the specific context of professionals "providing information for pecuniary gain;" for instance, architects consulting on a building project. *Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 843 (Pa. 2009); *see Elliott-Lewis Corp. v. Skanska USA Bldg., Inc.*, No. 14-03865, 2016 WL 2346737 (E.D. Pa. May 4, 2016). In Missouri, Plaintiffs rely on an intermediate appellate court's having cited § 552, Opp. at 31, but they do not address more recent cases in the Eighth Circuit applying the economic loss rule to negligent misrepresentation claims. *See* Mot. at 21 n.8. Finally, Plaintiffs'

citation of *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013), for the proposition that "the economic loss rule applies only in the products liability context," Opp. at 32 n.13, ignores that multiple cases after *Tiara* have applied the economic loss rule to bar misrepresentation and fraud claims based on allegedly deficient products. *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1104 (S.D. Fla. 2019); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1334 (S.D. Fla. 2013); *Burns v. Winnebago Indus., Inc.*, No. 8:13–cv–1427–T–24 MAP, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013).

Third, Plaintiffs cite three cases to suggest that negligent misrepresentation claims "in the product liability context" are viable under Indiana law. A closer look at these cases, however, reveals that they support Walmart's statement of the law: that Indiana only recognizes the tort of negligent misrepresentation in the context of a professional relationship. Mot. at 21 n.8; *see In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 823 (N.D. Ill. 2016) (rejecting argument that negligent misrepresentation was limited to employment relationships but not addressing whether it was recognized outside other narrowly defined circumstances, such as professional advisor relationships); *Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004) (recognizing right of recovery for *physical* injuries resulting from false information given about candidate for employment); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748, 750 (Ind. 2010) (recognizing a claim against a title insurer, where the insurer's relationship with the plaintiff was "of an advisory nature").

## III.  PLAINTIFFS FAIL TO STATE OMISSION-BASED CLAIMS BECAUSE THEY DO NOT PLAUSIBLY ALLEGE A DUTY TO DISCLOSE.

Plaintiffs identify no principle that would create a duty to disclose based on the allegations in this case. Specifically, Plaintiffs do not plausibly allege that Walmart had a fiduciary, special or

confidential relationship with Plaintiffs, had exclusive knowledge of the relevant facts, actively concealed any information, made partial disclosures that were misleading, made statements that became false and required correction, or knew Plaintiffs were entering any transaction under mistaken facts. Absent a duty to disclose, Plaintiffs cannot maintain their omission-based claims.

A.    **Under Kansas, Louisiana, Oklahoma, Florida, Arkansas, and Utah Law, there is no duty to disclose on the facts of this case.**

Plaintiffs argue that Kansas, Louisiana, Oklahoma, Florida, Arkansas, and Utah all recognize some duty to disclose other than a fiduciary, confidential, or special relationship. However, Plaintiffs' description of the case law ignores important details or mischaracterizes Walmart's argument. Moreover, even if some of Plaintiffs' cases can be seen as imposing a duty to disclose that is not premised on a special relationship, Plaintiffs still fail to identify a basis for imposing any such duty on Walmart.

- *Oklahoma*. Plaintiffs cite *Roberts Ranch Co. v. Exxon Corp*., 43 F. Supp. 2d 1252, 1259 (W.D. Okla. 1997), *Uptegraft v. Dome Petroleum Corp*., 764 P.2d 1350 (Okla. 1988)), and *Specialty Beverages, L.L.C. v. Pabst Brewing Co*., 537 F.3d 1165, 1181 (10th Cir. 2008), for the proposition that "a fiduciary relationship is not required for a duty to disclose to arise under Oklahoma law." Opp. at 34. Walmart acknowledged, however, that a "confidential" or other "special" relationship could also suffice—but Plaintiffs fail to allege one here. Plaintiffs' cases are not inconsistent. *Specialty Beverages* involved extensive negotiations over a distributorship agreement, during which the defendant selectively disclosed details of its relationship with a third party. 537 F.3d at 1181-82. *Roberts Ranch* mentioned in dicta that "a duty to speak may arise from partial disclosure if, under the circumstances, partial disclosure is misleading." 43 F. Supp. 2d at 1259 n.12. It cited *Uptegraft*, which dealt with the failure of a tenant in land to disclose to its co-tenant that wells on the property were producing oil. The court expressly noted that "co-tenants of an estate in land stand in a relation to each other of trust and confidence and neither will be permitted to act in hostility to the other in reference to the joint estate." 764 P.2d at 1353.

- *Florida*. In context, the case Plaintiffs cite, *Friedman v. Am. Guardian Warranty Servs., Inc*., 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003), states that "[f]raud based upon a failure to disclose material information exists only when a duty to make such disclosure exists. This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties. Where a party in an arm's-length transaction undertakes to disclose information, all material facts must be disclosed." (citations omitted). Similarly, *Ramel v. Chasebrook Const. Co.*, 135 So. 2d 876, 882 (Fla. Dist. Ct. App. 1961) mentioned that "nondisclosure of a material fact may be deemed

fraudulent where the other party does not have equal opportunity to become apprised of the fact" or if a party "undertakes" to disclose information. *See also Telesphere Int'l, Inc. v. Scollin*, 489 So. 2d 1152, 1154 (Fla. Dist. Ct. App. 1986) (similar). Neither of these circumstances applies here. *See* Mot. at 23. And *Boddison v. Gen. Motors LLC*, No. 8: 20-cv-2139-WFJ-AEP, 2021 WL 2685770, at *2 (M.D. Fla. June 30, 2021) recognized a duty to disclose where plaintiffs alleged "materially false statements" and "a partial or incomplete, untrue disclosure" had been made. As discussed above, Plaintiffs have not plausibly alleged that Walmart made untrue or misleading disclosures.

- *Kansas.* Plaintiffs argue that a duty to disclose may arise where a "known defect is not known to or is not reasonably discoverable by the buyer," Opp. at 36 n.15, but ignores cases holding that a "party has a duty to disclose material facts if the party knows that the other is about to enter into the transaction under mistake as to such facts, and that the other, because of the relationship between them . . . would reasonably expect disclosure of such facts." *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 911 (10th Cir. 2005). Plaintiffs have not established a duty to disclose under Kansas law.

- *Arkansas*. Again, Plaintiffs' case was resolved on grounds of a special relationship: in *Badger Cap., LLC v. Chambers Bank of N. Arkansas*, 650 F.3d 1125, 1131 (8th Cir. 2011), the Eighth Circuit declined to find a duty to disclose because "there was insufficient evidence to find that the Bank had a confidential relationship with the Investors that would have given rise to the special circumstances creating disclosure duties . . . under Arkansas law." The court continued: "Arkansas courts appear to require the existence of some type of relationship or contact between the parties before they conclude that special circumstances exist." *Id.* Similarly, *Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc.*, 382 S.W.3d 6, 14 (Ark. App. Ct. 2011) simply recognizes that in some cases, "[t]here may be a special relationship or special circumstances requiring disclosure." *Id.* Again, as explained in Walmart's opening brief, Plaintiffs have not pled "special circumstances" here. For similar reasons, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 6334085, at *3 (N.D. Fla. Sept. 3, 2021) and the cases it relies on (discussing the fact pattern "where one party knows another is relying on misinformation to his detriment"), do not create a duty here either. *Id.* (quoting *Wochos v. Woolverton*, 378 S.W. 3d 280, 288 (Ark. Ct. App. 2010)).

- *Utah.* The case Plaintiffs cite for the proposition that a duty to disclose may arise in a variety of circumstances, *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332-33 (Utah 1990), declined to find a duty to disclose because the court did not "find that a fiduciary relationship existed between the parties," and there was no issue of misleading partial disclosures or other factors creating a duty to disclose. And more recent cases state that "[i]n the absence of a direct relationship, Utah courts have recognized an independent duty only when the defendant has incurred a fiduciary duty or an obligation to deal fairly and honestly under a statute or license." *Donner v. Nicklaus*, 778 F.3d 857, 873 (10th Cir. 2015). Even if Plaintiffs' buyer-retailer interaction with Walmart could be characterized as a "direct relationship," it is not a contractual relationship of the sort discussed in *Donner*. *See id.* More importantly, Plaintiffs have not identified what they believe is the source of the duty to disclose under Utah law.

- **_Louisiana_**. Plaintiffs argue that a party who "convey[s] information which may influence the conduct of the other party" must disclose "the whole truth," *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.,* 178 F. Supp. 3d 390, 401 (E.D. La. 2016), but the court in that case held that the plaintiff was required to identify "the relationship giving rise to the duty to speak" and had not identified a "factual basis" for that relationship with adequate specificity, *id.* at 402. Plaintiffs' other case, *Blanchard & Co. v. Contursi*, No. Civ.A. 99–1758, 1999 WL 955363, at *1 (E.D. La. Oct. 19, 1999), involved defendants who entered a "side deal" with the plaintiff's coin-buying agent and failed to disclose it—a situation not analogous to this case.

At bottom, Plaintiffs' arguments fail whether or not the cases in these jurisdictions recognize any duty to disclose outside a special relationship. That is because, as described in Walmart's Motion at 22-29 and below, Plaintiffs identify no other source of a duty to disclose the presence of naturally occurring heavy metals in amounts that have not been linked to any harm.

### B.   Plaintiffs' allegations are inconsistent with their argument that Walmart had exclusive knowledge of the purportedly omitted information.

Plaintiffs next argue that Walmart had "superior knowledge" about the heavy-metals content of Parent's Choice baby food products, but their own allegations refute this. The presence of naturally occurring heavy metals in baby foods, including some Walmart products, is widely known, public information. Plaintiffs even cite to those public documents—published in 2018, 2019, and 2021. They cannot simultaneously rely on public reporting on the presence of heavy metals in Walmart's products dating back to 2018 and claim that only Walmart knew there were heavy metals in its products. *See* Mot. at 24. Although the criteria for exclusive knowledge vary slightly across various jurisdictions, the general rule is that the plaintiff must have lacked access to the information. *See id.* and cases cited.

Nor do Plaintiffs' cases have any bearing on Walmart's allegedly superior knowledge here. In *Rush v. Whirlpool Corp.*, No. 07-2022, 2008 WL 509562, at *4 (W.D. Ark. Feb. 22, 2008), the plaintiff alleged that the defendant had "exclusive" knowledge of the defect and also "allege[d]

26

that Whirlpool actively concealed the defect." *Id.*[11] And in *In re Nat. Hockey League Players'*

*Concussion Inj. Litig.*, No. MDL 14–2551 SRN, 2015 WL 1334027, at *9 (D. Minn. Mar. 25,

2015), the plaintiffs "did not have access" to "material information." *Rose v. HP Inc.*, No. 20-cv-

02450-VC, 2020 WL 7714532, at *1 (N.D. Cal. Dec. 29, 2020), involved technical information

about printer performance that was "inconscpicuous[ly] place[d]" on the defendant's website, and

the court recognized that information must be "difficult" to find to meet the "exclusive knowledge"

standard. Similarly, in *O'Connor v. Ford Motor Co.*, No. 19-cv-5045, 2021 WL 4866353, at *27

(N.D. Ill. Oct. 19, 2021), the court noted that the average consumer may not "know about"

complaints that had been filed with the National Highway Traffic Safety Administration or "know

how to access them."[12] Here, Plaintiffs have already accessed the past four years' public reporting

on naturally occurring heavy metals in baby foods: they cite them throughout the Complaint. They

also do not allege that they did not have access to the public reporting—or to general information

about heavy metals accessible through other public media—when they purchased their products.

Finally, Plaintiffs are incorrect that *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196

(M.D.N.C. 1997) and *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008)

---

[11]   *See also Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011) (defect "difficult to discover" and defendant allegedly engaged in "active concealment" through a "customer service campaign designed to preclude customer discovery"); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 638 (E.D. Mich. 2019) (case involving not only concealment but also affirmative "misrepresent[ations]" of the product at issue as "functional").

[12]   *See also Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998) (pre-sale repairs to used van that plaintiff could not have known about); *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314, 1319 (D.N.M. 2003) (failure to disclose history of car's use); *Zwiercan v. Gen. Motors Corp.*, 58 Pa. D. & C.4th 251 (Com. Pl. 2002) (latent defect in car). *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33, 37 (1996) similarly involved a fact issue regarding "the disparity in the level of information available to" the parties. *Czuchaj v. Conair Corp.*, No. 13–CV–1901, 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014), though itself allowing a claim to go forward, recognized precedent for "dismiss[ing] claims based on the defendant's 'exclusive knowledge' where the plaintiffs failed to allege that the defendant had any information that was unavailable to the public." (citation omitted). Though Plaintiffs argue that Walmart has *more* knowledge than they did about its products, that does not support their argument because their complaint is premised on the mere presence of heavy metals in Parent's Choice baby food products—something that was not hidden from Plaintiffs.

somehow "support" their position. In *Breeden*, the court dismissed for failure to plead "facts from which it could be inferred that defendants concealed information which plaintiff could not obtain upon exercising due diligence." 171 F.R.D. at 196. And in *Bucci*, the court dismissed a fraud claim for failure to allege "any relationship between the parties that would form the basis for any duty . . . to disclose." 591 F. Supp. 2d at 783.

C. **Plaintiffs' allegations regarding Walmart's involvement in the Subcommittee investigation do not constitute active concealment.**

Plaintiffs do not cite a single fact showing that Walmart actively concealed any facts, from the congressional Subcommittee or from anyone. Even assuming that Walmart did not initially comply with the Subcommittee investigation (which Walmart disputes), that does not constitute active concealment—especially given that Walmart later complied with the investigation, leading to the Second Subcommittee Report. Regardless, because that alleged non-compliance occurred after many of Plaintiffs' alleged purchases, *see* Compl. ¶¶ 17-45 (most Plaintiffs allege having purchased products beginning in 2020 or earlier), it cannot be the basis for a duty to disclose arising prior to those purchases. None of Plaintiffs' cases are to the contrary. Indeed, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) shows a stark contrast to this case. There, the defendant allegedly "excluded relevant categories of incidents when investigations were underway" and "repeatedly denied the existence" of the alleged defect. *Id.* [13] There is no allegation in this case that Walmart ever denied that Parent's Choice baby food products contain naturally occurring elements, including heavy metals. Plaintiffs attempt to distinguish Walmart's cases on the ground that there was no "active[]"

---

[13]   *See also In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at *19 (D.N.J. May 8, 2017) (allegation that Defendant "took steps in order to conceal the defect"); *Stickrath v. Globalstar, Inc.*, No. C07-1941 THE, 2008 WL 344209, at *3 (N.D. Cal. Feb. 6, 2008) (plaintiffs put forward "sufficient allegations for Defendants' knowledge of material defects to be believable rather than merely imaginable").

concealment in those cases, *see* Opp. at 43, but that misses the entire point: Plaintiffs have not alleged a single fact suggesting that Walmart engaged in active concealment. Finally, because Plaintiffs do not plausibly allege any active concealment, Plaintiffs' citation to *Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 502 (Pa. Commw. Ct. 2013) in note 16 of their brief is not analogous and has no application here.

### D. Plaintiffs make no plausible allegations of partial statements of fact that were misleading absent further disclosures, or statements that were later rendered false by new information.

As explained above, Plaintiffs do not identify any misleading statements because they do not identify any statements related to the presence of metals. By the same token, Walmart has not made any partial disclosures relating to the presence of metals that could give rise to a duty to disclose more information. As explained in Walmart's motion at 26-27, courts have rejected the same theory as Plaintiffs'. Plaintiffs argue that *Simpson v. Champion Petfoods USA, Inc*., 397 F. Supp. 3d 952, 970-72 (E.D. Ky. 2019)—which, as described in Walmart's Motion, is directly on point—should not be considered because it is about dog food and not baby food. But they cite no authority for why that matters, and it does not; indeed, Plaintiffs cite several dog food cases of their own. In any event, limited representations about certain aspects of a product simply do not create a duty to disclose other facts about completely different—and harmless—aspects of the product. *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799 (N.D. Cal. 2019) (dismissing misrepresentation claims because the alleged misrepresentations did not "have anything to do with" the part of the product at issue).

Once again, Plaintiffs' own cases fail to support their position. *Zeiger v. WellPet, LLC*., 526 F. Supp. 3d 652, 664-66 (N.D. Cal. 2021), involved allegations about substances that included the additive BPA, juxtaposed with allegations that the defendant marketed its product as "natural." Though Plaintiff cites cases holding that the determination of whether statements are "puffery" is

a question of fact, Opp. at 48, as discussed above, there is no real dispute that in the appropriate case, the issue can be dissolved on a motion to dismiss. No rule requires the expenditure of judicial resources on a matter involving only true and inactionable statements. Finally, without meaningfully distinguishing them, Plaintiffs assert that Walmart's cases are "inapposite." Opp. at 46 n.22. Each of these cases, however, supports Walmart's position that it is appropriate to resolve omission-based claims on a motion to dismiss if there is no duty to disclose arising from partial representations. *See* Mot. at 27 and cases cited.

Nor have Plaintiffs identified any way in which statements Walmart made became false later. *See* Opp. at 48. For one thing, Plaintiffs have not identified anything that changed with regard to the Parent's Choice baby food products or Walmart's knowledge between the date that any given unit of product was sold and the date this lawsuit was filed. And although Plaintiffs suggest that Walmart could have learned of the alleged heavy metals content at the same time as everyone else—through the CR Report, HBBF Report, and Subcommittee Reports—even those reports would not have created a duty to disclose. As discussed, the reports do not identify any actual health risk from Walmart's Parent's Choice baby food products, and Plaintiffs had equal access to those materials.

### E.    Plaintiffs fail to allege that Walmart knew plaintiffs were entering transactions based on mistaken facts regarding the safety of the products where Plaintiffs do not credibly allege the products were unsafe.

Just as Plaintiffs fail to plausibly allege any affirmative misrepresentations about the quality or safety of Parent's Choice baby food products, Plaintiffs fail to allege that Walmart knew Plaintiffs were entering a transaction based on "mistaken facts." First, Plaintiffs do not appear to dispute that they have not alleged facts indicating that Walmart knew Plaintiffs were purchasing its products based on a mistaken understanding about the products' heavy metal content. *See* Mot. at 29. Second, because the products are not harmful, Plaintiffs could not have been "mistaken" in

believing that the products were safe. *See* Mot. at 28. Plaintiffs offer no plausible response. Instead, they cite only one case, *United Indus. Corp. v Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998), which analyzed claims under the Lanham Act and does not affect the result here.

Finally, Plaintiffs do not dispute that if Walmart did not have a duty to disclose, then the consumer-protection claims that require a duty to disclose are also deficient and require dismissal. Accordingly, this Court should dismiss the omission-based consumer-protection claims that Plaintiffs assert under the laws of Arkansas, Alabama, California, Colorado, Florida, Kansas, Kentucky, Louisiana, New Mexico, New York, North Carolina, Michigan and Oklahoma. *See* Mot. at 30.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint against Walmart should be dismissed in its entirety.

Dated:  February 18, 2022          Respectfully submitted,

By: */s/ Brandon B. Cate*
Steven W. Quattlebaum, Ark. Bar No. 84127
John E. Tull III, Ark. Bar No. 84150
Brandon B. Cate, Ark. Bar No. 2001203
Meredith A. Powell, Ark. Bar No. 2019164
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Tel:  501-379-1700
Fax: 501-379-1701
Email: quattlebaum@qgtlaw.com
Email: jtull@qgtlaw.com
Email: mpowell@qgtlaw.com

4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Tel:  479-444-5200
Fax: 479-444-6647
Email: bcate@qgtlaw.com

Christopher W. Keegan (admitted *pro hac vice*)
Shayne H. Henry (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel:  415-439-1400
Fax: 415-439-1500
Email: chris.keegan@kirkland.com
Email: shayne.henry@kirkland.com

Michael F. Williams, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  202-879-5000
Fax: 202-879-5200
Email: mwilliams@kirkland.com

Donna M. Welch (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel:  312-862-2000
Fax: 312-862-2200
Email: dwelch@kirkland.com

Attorneys for Defendant Walmart Inc.
(erroneously sued as Walmart, Inc.)